■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v JOHNNIE D. YOUNG, Appellant. [659 NYS2d 542] —Peters, J. Appeal from a judgment of the County Court of Otsego County (Coccoma, J.), rendered February 15, 1996, upon a verdict convicting defendant of the crime of manslaughter in the second degree.

In February 1995, defendant was indicted on one count of murder in the second degree arising out of an incident in the City of Oneonta, Otsego County. In the early morning hours of

---

January 7, 1995, defendant and a companion entered a pizzeria and sat down at a table near Michael Bell (hereinafter decedent) and his four companions. Defendant and decedent exchanged words which ultimately escalated into a physical altercation during which they both displayed knives. Within minutes, decedent was stabbed once in the heart, causing him to die shortly thereafter.

At trial, the jury heard the testimony of 26 witnesses including that of defendant. While admitting that he stabbed decedent, he claimed justification. At a precharge conference at which counsel had the opportunity to provide County Court with proposed charges, the court reviewed the instructions it intended to provide to the jury. Upon its charge to the jury on the crime of murder in the second degree and the lesser included offenses of manslaughter in the second degree and criminally negligent homicide, defendant neither objected nor asked for any additional charge.

The jury returned a verdict convicting defendant of manslaughter in the second degree. After an unsuccessful attempt to set aside the verdict as against the weight of the evidence, defendant was sentenced to a term of incarceration of $4^1/_2$ to $13^1/_2$ years. He now appeals, contending that the conviction was against the weight of the evidence, the prosecution failed to disprove justification as a defense and County Court's charge to the jury improperly shifted the burden of proof.

As to the challenge to County Court's jury charge, defendant admits that he neither objected to such charge nor asked for an additional charge, thereby precluding the court from issuing a curative instruction and failing to preserve this issue for our review (*see, People v Robinson*, 88 NY2d 1001; *People v Hubert*, 238 AD2d 745; *People v Southwick*, 232 AD2d 755, *lv denied* 89 NY2d 930). We also decline to reverse on this issue in the interest of justice. County Court's initial instructions to the jury were correct. The error, if any, took place in response to a jury request which was, again, not objected to by defendant. Considering the court's instructions in their entirety, we find that they "insured that the jury was not misled" (*People v Maher*, 89 NY2d 456, 464; *see, People v Alava*, 216 AD2d 794, 795, *lv denied* 87 NY2d 897).

We also disagree with defendant's contention that the prosecution failed to disprove justification as a defense. Viewing the evidence, as we must, in a light most favorable to the People (*see, People v Rossey*, 89 NY2d 970; *People v Contes*, 60 NY2d 620), we find that legally sufficient evidence was presented to establish defendant's guilt. As to the weight of the evidence,

when viewed in a neutral light (*see, People v Carthrens*, 171 AD2d 387), we are again satisfied that the jury did not fail to "give [it] the weight it should be accorded" (*People v Bleakley*, 69 NY2d 490, 495). Mindful that in the first instance it is for the jury to assess the credibility of witnesses and resolve conflicting inferences and conclusions which could be drawn from the evidence presented (*see, People v Shannon*, 105 AD2d 986), we find support for the jury's conclusion that the prosecution disproved justification. While the defense of justification permits the use of force under certain circumstances: "Generally, the force permitted is related to the degree of force reasonably believed necessary to repel various threats. Thus, one may use physical force * * * if 'he reasonably believes such to be necessary to defend himself * * * from what he reasonably believes to be the use or imminent use of unlawful physical force by [another]' (Penal Law § 35.15 [1]) or * * * may use 'deadly physical force' if '[h]e reasonably believes that such other person is using or about to use deadly physical force' against him (Penal Law § 35.15 [2] [a])" (*Matter of Y. K.*, 87 NY2d 430, 433). While there is no affirmative duty to retreat when presented with unlawful physical force by another (*see*, Penal Law § 35.15 [1]), such is not the case with regard to deadly physical force. Subject to certain limited exceptions not applicable here, a person may not use deadly physical force upon another if he or she can retreat with complete safety (Penal Law § 35.15 [2] [a]; *Matter of Y. K., supra*, at 433).

From the evidence adduced at trial, we find that the jury could have found that defendant was the initial aggressor and that he had an opportunity to safely retreat. What began as a verbal argument between defendant and decedent, seated at separate tables across from each other in a pizzeria, quickly escalated to a physical confrontation. Most of the witnesses testified that defendant initially approached decedent's table, was the first to initiate physical contact and was the first to pull a knife. Upon seeing that defendant had a knife, decedent's sister-in-law physically placed herself between defendant and decedent on two occasions and pleaded with defendant to stop. Defendant pushed her aside, telling her to "get the f*** out of the way". While the testimony is not consistent as to whether decedent removed his knife from its sheath, all of the witnesses, including defendant, admitted that defendant unsheathed his knife and kept jabbing at decedent. Testimony revealed that, thereafter, decedent raised his arms with his palms turned upward, revealing that both of his hands were empty. A knife in a sheath was later discovered in an inside pocket of decedent's leather jacket.

The issue of whether decedent displayed an unsheathed knife to defendant is not determinative. Defendant told the police that he considered retreating but chose not to, insisting that he had just as much a right to be present at the pizzeria as did decedent.* Hence, despite evidence that both decedent and defendant had been consuming alcoholic beverages prior to the altercation and that decedent was both heavier and taller than defendant, the testimony supported the jury's conclusion that defendant was the initial aggressor and that the prosecution disproved the defense of justification beyond a reasonable doubt (*see, People v Cruz*, 233 AD2d 102, *lv granted* 89 NY2d 941; *People v Klein*, 221 AD2d 803, *lv denied* 87 NY2d 975).

Cardona, P. J., Mercure, Casey and Spain, JJ., concur. Ordered that the judgment is affirmed.

---

* Defendant explained that he was not going to back down since "I felt * * * it wasn't my right to leave. I didn't come to bother nobody. Why should I leave? Why should I leave just because a man is threatening my life? I was just enjoying my beer."