*Supreme Court, Appellate Division*
*Third Judicial Department*

Decided and Entered: July 28, 2016                    105996
_____

THE PEOPLE OF THE STATE OF
    NEW YORK,
                    Respondent,

        v                                  MEMORANDUM AND ORDER

MICHAEL J. GIBSON, Also Known
    as JO-JO,
                    Appellant.
_____

Calendar Date: May 24, 2016

Before: Lahtinen, J.P., McCarthy, Garry, Clark and Mulvey, JJ.

_____

        George J. Hoffman Jr., Albany, for appellant.

        Stephen K. Cornwell Jr., District Attorney, Binghamton
(Stephen D. Ferri of counsel), for respondent.

_____

Garry, J.

        Appeal from a judgment of the County Court of Broome
County (Cawley, J.), rendered October 30, 2012, upon a verdict
convicting defendant of the crimes of assault in the second
degree and criminal possession of a weapon in the third degree.

        In September 2010, defendant allegedly stabbed the victim
once with a knife in the abdomen during a late night street
altercation in the Village of Endicott, Broome County. Following
a trial, the jury acquitted defendant of attempted assault in the
first degree, but convicted him of assault in the second degree
and criminal possession of a weapon in the third degree.
Thereafter, County Court determined that defendant was a second
felony offender — a status predicated on a 2003 Oklahoma

conviction — and sentenced defendant to an aggregate prison term of six years, followed by five years of postrelease supervision. Defendant appeals.

Defendant contends that the verdict was against the weight of the evidence in that, first, the evidence overwhelmingly supported his justification defense and, second, the People did not prove that he intended to cause injury to the victim. We disagree. "Use of deadly physical force is justified when . . . a defendant reasonably believes that such force is necessary . . . to protect against the use or imminent use of deadly physical force" (People v Fisher, 89 AD3d 1135, 1137 [2011], lv denied 18 NY3d 883 [2012]). As defendant raised the justification defense, it was the People's burden to disprove it by "demonstrat[ing] beyond a reasonable doubt that . . . defendant did not believe deadly force was necessary or that a reasonable person in the same situation would not have perceived that deadly force was necessary" (People v Umali, 10 NY3d 417, 425 [2008], cert denied 556 US 1110 [2009]).

The People presented the testimony of three eyewitnesses to the stabbing, including the victim, the victim's wife and a passerby who observed the incident. The victim testified that defendant and the victim's ex-girlfriend approached the victim and his wife on the street. Defendant demanded that the victim return a camera that he believed the victim had taken from him at a party earlier in the evening. At some point, the victim pushed defendant, and the two engaged in a "shoving match." The victim stated that he emptied the contents of his pockets, including a box cutter, and gave them to his wife because he believed a fight was imminent. When the two men stopped pushing each other, the victim became aware that he was bleeding, and then realized that he had been stabbed after he saw defendant holding a butterfly knife. According to the victim, defendant stated that "he didn't mean it," but left the area without offering help. Following the confrontation, police found a closed box cutter — with a lock that prevented it from being opened with one hand — in the pocket of the pants that the victim had been wearing. The victim underwent surgery for a stab wound in the abdominal area, was hospitalized for approximately two weeks and was prescribed pain medication.

On cross-examination, the victim acknowledged that he had initially lied to police by telling them that he did not have the box cutter, because he did not want to get into trouble. He further stated that he could not remember the confrontation clearly because everyone involved was "pretty drunk," and conceded that he was "not sure" whether he had tried to use his box cutter on defendant, and that, while he did not remember, he "possibly" could have pulled it on defendant first. In her testimony, the victim's wife denied that the victim gave her the contents of his pockets during the confrontation. She stated that she did not see the victim take out a weapon at any point. She said that, as the victim and defendant scuffled, she saw defendant push the victim in the stomach. The victim then attempted to react but was unable to do so, and the wife realized that he was bleeding.

The passerby, who did not know defendant or the victim before the incident, testified that he observed the confrontation from a distance of approximately 6 to 10 feet. He described defendant and the victim by race and height, testifying that the shorter man, who was about 5½ feet tall, approached a man, who was approximately six feet tall, and asked for his phone or camera.[1] One of the men then pushed the other, who pushed back, and the struggle "escalated into the road." The passerby stated that he had a "[r]eal clear" view of the shorter man pulling out a knife and stabbing the taller man. After the stabbing, according to the passerby, the taller man said, "[Y]ou stabbed me in my rib." The taller man then "pulled his knife" out of his pocket. The passerby stated that he did not see anything in the taller man's hands before the stabbing, "[b]ut after he did." He clarified that he was certain that the taller man had nothing in his hands when he was stabbed and that he was "70 percent" sure that there was nothing in the taller man's hands at any point

---

[1] The evidence established that the victim stood approximately six feet tall, weighed 200 pounds and was taller than defendant. Although the passerby was unable to fully confirm the identification at the time of trial, the evidence and other testimony left no doubt that defendant and the victim were the participants in the confrontation that he had witnessed.

before that. After the stabbing, the passerby left the area and did not see the resolution of the confrontation.

Defendant did not testify, but his sister testified that defendant had told her after the fight that the victim had pulled out a box cutter and tried to cut him with it during the struggle and that defendant had reacted by stabbing him with the butterfly knife. The sister and her husband further testified that the butterfly knife was not defendant's, but belonged instead to the sister's husband, who had asked defendant to hold onto it temporarily that night.

On these facts, as the People concede, a different verdict would not have been unreasonable (see People v Bleakley, 69 NY2d 490, 495 [1987]; People v Zindle, 48 AD3d 971, 972 [2008], lv denied 10 NY3d 846 [2008]). Nevertheless, viewing the evidence in a neutral light and mindful of the deference accorded "to the fact-finder's opportunity to view the witnesses, hear the testimony and observe demeanor" (People v Bleakley, 69 NY2d at 495; see People v Newland, 83 AD3d 1202, 1205 [2011], lv denied 17 NY3d 798 [2011]), we find no reason to disturb the jury's rejection of the justification defense. Despite the evidence that the victim had the box cutter on his person during the struggle and the equivocal nature of his statements about it, the testimony of the passerby and the victim's wife indicated that he did not wield it before defendant stabbed him, and there was no clear proof to the contrary (compare People v Young, 240 AD2d 974, 977 [1997], lv denied 90 NY2d 1015 [1997]). Further, there was no proof that defendant was unable to retreat "with complete personal safety" (Penal Law § 35.15 [2] [a]; see People v Young, 240 AD2d at 976). Any inconsistencies in the testimony as to who was the aggressor at each stage of the conflict were for the jury to resolve (see People v Green, 121 AD3d 1294, 1295 [2014], lv denied 25 NY3d 1164 [2015]; People v Vanderhorst, 117 AD3d 1197, 1199-1200 [2014], lv denied 24 NY3d 1089 [2014]).

"Defendant's intent to cause injury was a factual question that the jury could infer from his conduct and the surrounding circumstances" (People v Harden, 134 AD3d 1160, 1163 [2015] [citations omitted], lv denied ___ NY3d ___ [June 7, 2016]; see People v Zindle, 48 AD3d at 973). The surgeon who treated the

victim at the hospital testified that the front portion of the victim's stomach was "completely penetrated" and that his liver was cut, as well as the ligament supporting the stomach and colon.  The surgeon testified that such an injury would require "considerable force" and, if left untreated, would potentially result in "[s]epsis, shock [and] death."  This evidence, as well as the testimony that described defendant's "pushing" movement at the moment of the stabbing, established defendant's intent to cause injury (see People v Newland, 83 AD3d at 1204; People v Francis, 83 AD3d 1119, 1122 [2011], lv denied 17 NY3d 806 [2011]).  Accordingly, we find that the verdict was not contrary to the weight of the evidence (see People v Taylor, 118 AD3d 1044, 1045-1047 [2014], lv denied 23 NY3d 1043 [2014]; People v Brown, 100 AD3d 1035, 1036-1037 [2012], lv denied 20 NY3d 1009 [2013]; compare People v Morgan, 99 AD3d 622, 622-623 [2012]; People v Jones, 59 AD3d 864, 867 [2009]).

The People concede that County Court erred in sentencing defendant as a second felony offender, as the elements of his predicate Oklahoma felony were not "equivalent to those of a New York felony" (People v Gonzalez, 61 NY2d 586, 589 [1984]; see Penal Law § 70.06 [1] [b] [i]; People v Jurgins, 26 NY3d 607, 613 [2015]).  As relevant here, the inquiry regarding equivalency is "limited to a comparison of the crimes' elements as they are respectively defined in the foreign and New York penal statutes" (People v Muniz, 74 NY2d 464, 467-468 [1989]; accord People v Parker, 121 AD3d 1190, 1191 [2014]).  Defendant was previously convicted under an Oklahoma statute prohibiting possession of a firearm by a felon; however, operability is not a required element of the Oklahoma statute (see 21 Okla Stat Ann §§ 1283 [A]; 1284; Sims v State, 762 P2d 270, 272 [1988]; Maixner v Rudek, 492 Fed Appx 920, 923 [10th Cir 2012]).  In New York "[o]perability is a required element of the crime of criminal possession of a handgun, rifle or shotgun" (People v Rowland, 14 AD3d 886, 887 [2005]; see People v Longshore, 86 NY2d 851, 852 [1995]).  Thus, as the comparable New York statute requires an element that the Oklahoma crime does not, defendant's Oklahoma conviction cannot support a finding that he was a second felony offender (see Penal Law § 265.02 [1]; People v Parker, 121 AD3d at 1191; People v Maglione, 305 AD2d 426, 426-427 [2003]).  Accordingly, defendant's sentence must be vacated.  In view of

this determination, we need not address his contention that his sentence was harsh and excessive.

Lahtinen, J.P., McCarthy, Clark and Mulvey, JJ., concur.


ORDERED that the judgment is modified, on the law, by vacating the sentence imposed; matter remitted to the County Court of Broome County for resentencing; and, as so modified, affirmed.


ENTER:

Robert D. Mayberger
Clerk of the Court