OPINION OF THE COURT
Michael F. McKeon, J.
Defendant was arrested on or about November 26, 2015, and arraigned on multiple charges that occurred in three Cayuga County towns and villages. After waiving indictment, defendant was charged by superior court information (SCI) with burglary in the third degree, grand larceny in the third degree, unlawfully fleeing a police officer in a motor vehicle in. the third degree and reckless driving. In a March 23, 2016 letter to County Court Judge Thomas G. Leone, defendant’s counsel requested that defendant be considered for judicial diversion. *437 Defendant was arraigned on the SCI on March 24, 2016, and the matter was transferred to this court for judicial diversion consideration on the same day.
An alcohol and substance abuse evaluation was performed on defendant by Confidential Help for Alcohol and Drugs (CHAD) on January 27, 2016, finding defendant to be chemically dependent. Following his request for judicial diversion, defendant was assessed by resource coordinator Marcie Pennella. Ms. Pennella, in a memo dated April 14, 2016, determined that defendant was chemically dependent and met the qualifications for the judicial diversion program. A judicial diversion hearing was held on May 3, 2016. The court heard arguments from counsel as well as informal testimony from defendant.
The People oppose diversion in this matter. They argue that defendant is ineligible for diversion under Criminal Procedure Law § 216.00 (1) (a) as he has a prior out-of-state felony conviction within the past 10 years and said felony qualifies as a violent felony under New York State law.
Prior to moving to New York State almost two years ago, defendant resided in California, the state where he was born. On July 5, 2013, he was arrested in California on three charges following a domestic-related incident. Following a plea of guilty, defendant was convicted of violating California Penal Code § 29800 (a) (l),[1] possession of a firearm by a felon, and sentenced in July 2013 to a term of incarceration of two years in prison. At the time of his arrest, defendant had a criminal history that included prior misdemeanor and felony convictions.
The initial question beforé the court is whether defendant’s conviction of California Penal Code § 29800 (a) (1), a felony, makes him ineligible for judicial diversion. Criminal Procedure Law § 216.00 (1) (a) renders a defendant ineligible to participate in judicial diversion when the defendant has been convicted of a violent felony offense as defined in section 70.02 of the Penal Law within the preceding 10 years, unless the prosecutor consents. According to the People, defendant’s 2013 California conviction precludes his participation in the judicial diversion program.
*438 Defendant argues that Criminal Procedure Law § 216.00 (1) (a) only contemplates prior violent felonies that occurred in New York, not out-of-state violent felony convictions. The parties correctly note that Criminal Procedure Law § 216.00 (1) (a) is silent on the issue, merely defining a violent felony offense as one defined in section 70.02 of the Penal Law without any reference to similar offenses in other jurisdictions. According to defendant, other laws specify the inclusion of out-of-state convictions, such as Penal Law § 70.04 (1) (b) (i), which includes convictions in other jurisdictions for purposes of determining whether a prior conviction is a predicate violent felony offense. Given that, defendant argues, the omission of other jurisdictions in Criminal Procedure Law § 216.00 (1) (a) demonstrates the legislature’s intent to not consider out-of-state convictions in determining eligibility for judicial diversion. This issue appears to be one of first impression.
Article 216 of the Criminal Procedure Law was enacted in 2009 as part of the amendments to the 2004 Drug Law Reform Act (DLRA). The DLRA of 2004 “is a remedial statute, allowing low-level, nonviolent drug offenders who meet various basic eligibility requirements and who were originally sentenced under legislation that often mandated ‘inordinately harsh punishment’ to apply for resentencing” (People v Smith, 139 AD3d 131, 133 [1st Dept 2016]). Criminal Procedure Law §§ 216.00 and 216.05 were included in the 2009 amendments, providing certain eligible nonviolent defendants the opportunity to be offered judicial diversion for substance abuse treatment, avoiding a prison sentence and, possibly, receiving a reduction or even a dismissal of the charges (see CPL 216.00, 216.05).
“[I]n matters of statutory interpretation, [the] primary consideration is to discern and give effect to the Legislature’s intention” (People v Thompson, 26 NY3d 678, 685 [2016] [internal quotation marks omitted]). “[W]hen the statutory language is clear and unambiguous, it should be construed so as to give effect to the plain meaning of the words used” (People v Williams, 19 NY3d 100, 103 [2012] [internal quotation marks omitted]). Thus, a court’s role is to start with the language itself, “giving effect to the plain meaning thereof” (Majewski v Broadalbin-Perth Cent. School Dist., 91 NY2d 577, 583 [1998]).
While at first glance it might seem that the reference to only violent felony offenses as defined in section 70.02 of the Penal Law is clear, the contradictory nature of the statute requires *439 the court to delve further into its meaning (see generally Majewski, 91 NY2d at 583). A statute “must be construed as a whole and . . .its various sections must be considered together and with reference to each other” (Matter of Shannon, 25 NY3d 345, 351 [2015] [internal quotation marks omitted]).
As the People point out, the Court of Appeals was faced with a similar issue in People v Yusuf (19 NY3d 314 [2012]). In Yusuf, the Court addressed whether an out-of-state felony could qualify as a violent felony for purposes of enhanced sentencing under Penal Law § 70.70 (4). Like Criminal Procedure Law § 216.00 (1) (a), Penal Law § 70.70 (1) (c) defines a “violent felony” as having the same meaning as the term is defined in Penal Law § 70.02 (1), without reference to out-of-state convictions. The Yusuf Court looked carefully at the plain meaning of the statute and held that “the Legislature meant for prosecutors and sentencing courts to take foreign violent felony convictions into account when determining a defendant’s sentencing status, notwithstanding the ambiguity created by the reference in section 70.70 (1) (c) to Penal Law § 70.02” (Yusuf, 19 NY3d at 320). In arriving at its conclusion, the Court of Appeals considered the fact that Penal Law § 70.70 (4) cross-references Criminal Procedure Law § 400.21, which includes out-of-state violent felony convictions when adjudicating a defendant a second felony offender (see Yusuf, 19 NY3d at 319).
In addition to excluding defendants who, within the preceding 10 years, had been convicted of a violent felony offense as defined in section 70.02 of the Penal Law, the judicial diversion statute also excludes those offenders who have previously been adjudicated a second violent felony offender pursuant to section 70.04 of the Penal Law or a persistent violent felony offender pursuant to section 70.08 of the Penal Law (see CPL 216.00 [1] [b]). Section 70.04 of the Penal Law includes out-of-state violent felony offenders for purposes of determining whether a prior conviction is a predicate violent felony conviction, and is incorporated by reference in Penal Law § 70.08 as well (see Penal Law §§70.04 [1] [b] [i]; 70.08 [1]). Although the analysis in Yusuf may be more readily followed when considering Penal Law § 70.70 (1) (c) as compared to Criminal Procedure Law § 216.00 (1) (a), the underlying theme is the same. As the Court in Yusuf stated, “our view of [the statute] is consistent with the Legislature’s general sentencing design for recidivist offenders; specifically, article 70 is replete with provisions directing the use of foreign convictions as predicate offenses for purposes of enhancing sentences” (Yusuf, 19 NY3d at 320-321).
*440 By comparison, the Court of Appeals in People v Golo (26 NY3d 358, 362 [2015]) held that where the wording of a statute has caused an unintended consequence, “it is up to the legislature to correct it.” In Golo, the Court was faced with the question of whether, for resentencing purposes, an “exclusion offense” under the 2009 DLRA included violent felony offenses that occurred after, rather than prior to, the offense a defendant sought to be resentenced for (Golo, 26 NY3d at 360). Despite recognizing the “seeming anomaly” of treating a violent felony that occurred after the drug offense differently than one that occurred before, the Court was guided by the plain meaning of the statute, which clearly referenced a “previous” felony (see id. at 361-362). Such clarity is absent from Criminal Procedure Law § 216.00 (1) (a), however, leaving this court to dive deeper into the legislative intent as discussed above.
The quandary here is that while the purpose of the DLRA was to undo the harsh punishments of the Rockefeller Drug Laws and, thus, relieve offenders of such strict laws, it also placed its focus on low-level, nonviolent offenders, a common theme in the DLRA and the New York courts’ interpretation thereof. In fact, the purpose of the DLRA is to “reform the sentencing structure of New York’s drug laws to reduce prison terms for non-violent drug offenders, provide retroactive sentencing relief and make related drug law sentencing improvements” (Assembly Mem in Support, Bill Jacket, L 2004, ch 738 at 3 [emphasis added]). The bill jacket is replete with references to nonviolent offenders and the law provided the possibility of increased punishment for violent offenders while decreasing punishment for nonviolent offenders.
“[W]hen the legislature enacted the 2009 DLRA, it sought to ameliorate the excessive punishments meted out to low-level, nonviolent drug offenders under the so-called Rockefeller Drug Laws, and therefore the statute is designed to spread relief as widely as possible, within the bounds of reason, to its intended beneficiaries” (People v Coleman, 24 NY3d 114, 122 [2014]).
A review of the legislative history of the DLRA demonstrates that the “intended beneficiaries” were low-level, nonviolent offenders. Despite this, the legislature did not completely close the door on offenders who at some point in their history had a violent offense. Instead, it limited, in certain circumstances, the prior violent offense to one that occurred within the preced *441 ing 10 years. Such is the case with Criminal Procedure Law § 216.00 (1) (a), demonstrating the legislature’s intent that certain nonviolent offenders “with temporally remote violent felony convictions” would be eligible for judicial diversion (People v Sosa, 18 NY3d 436, 440 [2012]).
Nevertheless, while the DLRA is designed to spread relief as widely as possible, the question remains as to how far its reach goes. The Court of Appeals “has taken an expansive approach in interpreting the DLRA,” interpreting it broadly to accomplish its goals (Smith, 139 AD3d at 135). In the context of the judicial diversion statute, it is clear that the legislature wanted to make sure that those eligible for diversion be offered it. It did so by “removing prosecutorial consent. . . [returning] the decision-making authority as to whether a defendant is eligible for diversion to the judiciary” (Smith, 139 AD3d at 136). As the Court in Smith pointed out, the judicial diversion program is unique in that a special provision was added to the Judiciary Law to ensure that cases eligible for diversion be assigned to judges who by virtue of their caseload and training are in the best position to provide effective supervision of such cases, such as drug treatment courts (see Judiciary Law § 212 [2] [r]; Smith, 139 AD3d at 136). In line with the remedial nature of the DLRA to reform unduly harsh sentencing, article 216 provides a mechanism for eligible defendants to avoid the harsh punishments of the past and receive the treatment they need.
On the other hand, it is also clear that in drafting article 216, the legislature took public safety into account. This is demonstrated by the fact that courts considering a defendant for judicial diversion are to consider and make findings of fact with regard to five delineated factors, one of which is whether institutional confinement is or may not be necessary for the protection of the public (see CPL 216.05 [3] [b] [v]). Likewise, the statute allows for the court, if a hearing is held, to consider evidence as to whether a defendant had, within the preceding 10 years, been adjudicated a youthful offender for a violent felony offense as defined in Penal Law § 70.02 or any offense for which a merit time allowance is not available pursuant to Correction Law § 803 (1) (d) (ii) (see CPL 216.05 [3] [a] [i]). Similarly, the statute automatically deems a defendant ineligible for the program, absent the prosecutor’s consent, if he or she is charged with or in the preceding 10 years had been convicted of a violent felony offense as defined therein, or if he *442 or she had previously been adjudicated a second violent felony offender or a persistent violent felony offender (see CPL 216.00 [1] [a], [b]).
“[R]emedial statutes such as the DLRA should be interpreted broadly to accomplish their goals” (People v Brown, 25 NY3d 247, 251 [2015]). However, while on the one hand the statute’s reach is broad, it is not so broad that a defendant’s history of violence is to be overlooked. Here, if the court was to take the defendant’s position, it would essentially be saying that those who previously committed a violent crime in another state are entitled to be rewarded with more leniency than those who committed a similar crime in New York (see generally Yusuf, 19 NY3d at 320-321). This court declines to take such an approach.
It is difficult to imagine that the legislature meant for out-of-state convictions to be considered in one section of Criminal Procedure Law § 216.00 (1) but not in the other. To exclude an equally violent crime from consideration merely because a defendant was of the good fortune to have committed the crime in another state defies logic, even when considering a remedial statute like the DLRA. “[Legislative history and policy considerations do not support the proposition, advanced by [defendant] that the Legislature never intended [out-of-state convictions to be considered as a disqualifying offense]” (People v Mills, 11 NY3d 527, 534 [2008]). Instead, interpreting the language to include equivalent out-of-state violent felony convictions is “the more sensible and integrated reading of the interrelated statutory text” (Yusuf, 19 NY3d at 320). The court finds that a defendant’s out-of-state conviction may render a defendant ineligible for diversion under Criminal Procedure Law § 216.00 (1) (a).
Despite this court’s finding that a defendant’s out-of-state conviction may render a defendant ineligible for diversion under Criminal Procedure Law § 216.00 (1) (a), this does not end the court’s inquiry. The question remains as to whether defendant’s out-of-state conviction is equivalent to a New York violent felony, rendering him ineligible for diversion.
According to the People, California Penal Code § 29800 (a) (1) is equivalent to a violent felony in New York, namely criminal possession of a weapon in the third degree, pursuant to Penal Law § 265.02 (5) (ii). The court notes, at the onset, that under California law, for purposes of that state’s sentence enhancement laws, California Penal Code § 29800 (a) (1) is *443 neither a violent felony offense nor a serious felony, as defined in California Penal Code §§ 667.5 and 1192.7 respectively.
Nevertheless, the People rely on the definition of a predicate violent offender in Penal Law § 70.04 (1) (b) to determine whether the California conviction is the equivalent of a New York violent felony offense. In the context of sentence enhancement, in determining whether a prior conviction is a predicate violent felony conviction in New York, an out-of-state conviction must include all of the essential elements of a New York felony (Penal Law § 70.04 [1] [b]). Thus, to determine whether a foreign crime is equivalent to a New York felony, the court must compare the elements in the applicable New York statute to the elements in the foreign statute (see People v Gonzalez, 61 NY2d 586 [1984]).
California Penal Code § 29800 (a) (1) provides that
“[a]ny person who has been convicted of a felony under the laws of the United States, the State of California, or any other state, government, or country, or of an offense enumerated in subdivision (a), (b), or (d) of Section 23515, or who is addicted to the use of any narcotic drug, and who owns, purchases, receives, or has in possession or under custody or control any firearm is guilty of a felony.”
New York Penal Law § 265.02 (5) (ii), upon which the People rely, defines criminal possession of a weapon in the third degree as when a person “possesses a firearm and has [previously been] convicted of á felony or a class A misdemeanor defined in this chapter within the five years immediately preceding the commission of the offense and such possession did not take place in the person’s home or place of business.”
In determining whether an out-of-state conviction qualifies as a predicate offense, “ ‘[the court’s] inquiry is limited to a comparison of the crimes’ elements as they are respectively defined in the foreign and New York penal statutes’” (Yusuf, 19 NY3d 314, 321 [2012], quoting People v Muniz, 74 NY2d 464, 467-468 [1989], citing People v Olah, 300 NY 96, 98 [1949]; see also People v Jurgins, 26 NY3d 607 [2015]). Courts are to consider the statutes themselves “and may not consider the allegations contained in the accusatory instrument underlying the foreign conviction” (Jurgins, 26 NY3d at 613). Where the foreign statute renders several different acts criminal, the court under a narrow exception to the Olah rule must consider the underlying allegations (see id.).
*444 The People argue that the California statute at issue here proscribes conduct that the New York statute does not, requiring the court to look to the accusatory instrument. However, the People have failed to provide to the court the California accusatory instrument, leaving such a review impossible.[2] In any event, the court disagrees that such a review is necessary as under the plain language of the statutes, the California statute is not equivalent to New York Penal Law § 265.02 (5) (ii).
In order for a defendant to be convicted under Penal Law § 265.02 (5) (ii), the prior crime must have occurred within the five years immediately preceding the commission of the offense and an exception exists for possession in a person’s home or place of business. California Penal Code § 29800 (a) (1), on the other hand, does not have a time limit for the prior crime and does not contain an exception for a person’s home or place of business, making its provisions broader than Penal Law § 265.02 (5) (ii). Thus, a person in California could be convicted of felony possession of a weapon even if the prior crime occurred more than five years prior to the commission of the offense and even if the possession took place at the person’s home or office.
Moreover, the definition of “firearm” in California as it applies to California Penal Code § 29800 (a) (1) differs from that in New York (compare California Penal Code § 16520 [a], [b] [14] with New York Penal Law § 265 [3]). The definition of a firearm in New York “is given a more limited meaning by Penal Law § 265.00 (3)” than a firearm in California, which includes a broader range of firearms than New York’s definition does (People v Maglione, 305 AD2d 426, 427 [2d Dept 2003]). Because the two statutes render criminal different acts arid contain different definitions of the term “firearm,” they cannot be deemed to be equivalent (see Maglione, 305 AD2d at 427; see generally Jurgins, 26 NY3d at 615; People v Gibson, 141 AD3d 1009 [3d Dept 2016] [Oklahoma statute does not require oper-ability of weapon, a required element in New York]). Defendant’s conviction in California for possession of a weapon by a *445 felon does not automaticálly preclude defendant from participating in the judicial diversion program.
The court’s inquiry thus shifts to a consideration of the five factors set forth in Criminal Procedure Law § 216.05 (3) (b). Defendant was charged with the qualifying offenses of burglary in the third degree and grand larceny in the third degree, rendering him an eligible defendant under Criminal Procedure Law § 216.00 (see generally Smith, 139 AD3d at 131). Nevertheless, finding that a defendant is an eligible defendant is only one factor for the court in determining whether a defendant should be allowed to participate in the judicial diversion program. Having found the defendant to be an eligible defendant, the court must next consider and make findings of fact with respect to whether: (1) defendant has a history of alcohol or substance use or dependence; (2) such alcohol or substance use or dependence is a contributing factor to the defendant’s criminal behavior; (3) defendant’s participation in judicial diversion could effectively address such abuse or dependence; and (4) institutional confinement of defendant is or may not be necessary for the protection of the public (see CPL 216.05 [3] [b]).
Defendant’s alcohol use began at an early age, leading to his use of other substances, notably opiates and methamphetamine. The record reflects an extensive history of drug and alcohol use. He has been diagnosed as alcohol and opiate dependent by CHAD and alcohol, opiate and methamphetamine dependent by Ms. Pennella. The court finds that defendant has a history of alcohol or substance use or dependence.
Defendant has reported to the court that his personality changes when under the influence of alcohol and that he has never been to treatment. He reports that his past arrests, as well as the instant offense, occurred while he was under the influence of alcohol.[3] Although the record is mostly reliant on defendant’s self-reported behavior, his criminal history appears to have been driven by his substance use, as well as his mental health needs. The court finds defendant’s alcohol and substance use and dependence to be a contributing factor to his criminal behavior.
Judicial diversion gives defendants the opportunity to address the substance use and mental health issues that have led *446 to their criminal behavior. Defendant has not had treatment for his substance use, but reports his readiness to address this long-standing issue. While in jail he has attended Alcoholics Anonymous meetings and has begun reading books to help him address his addiction. Defendant’s participation in judicial diversion could effectively address his substance use and dependence.
Notwithstanding the above, defendant has a significant criminal history. He has been incarcerated in the California prison system more than once and has been supervised on both probation and parole. He has had at least one parole violation and has continued to offend. His current crime involved him stealing a car and fleeing from the police following a domestic incident. His 2013 California conviction involved a domestic incident whereby defendant allegedly displayed a firearm and threatened to kill his ex-wife and another man.
While his California conviction does not render him automatically ineligible for judicial diversion, such actions, if true, certainly display a propensity for violence and place the public at risk. The court may not have sworn statements or accusatory instruments to rely on here, but it cannot simply ignore the information contained in the Shasta County Sheriffs Office investigative report. Defendant claims that he did not possess a weapon during that incident. However, it is not for this court to make a factual determination as to whether or not defendant had a weapon during that domestic incident. Defendant pleaded guilty to the charge and is presumed to have committed the crime for which he pleaded guilty to.
“Courts are afforded great deference in making judicial diversion determinations” (People v Williams, 105 AD3d 1428, 1428 [4th Dept 2013], lv denied 21 NY3d 1021 [2013]). It is within their discretion to deny judicial diversion due to a defendant’s criminal history and threat to public safety (see e.g. People v Pittman, 140 AD3d 989 [2d Dept 2016]; People v Carper, 124 AD3d 1319 [4th Dept 2015]; People v Powell, 110 AD3d 1383 [2013]). Given the information contained in the Shasta County Sheriffs Office investigative report, this court is simply not willing to risk public safety here. Defendant’s criminal history, particularly his recent history, makes him a public safety risk and it is unlikely that participation in the judicial diversion program will be effective to protect the public.
As a result of the above, the court finds that defendant is an eligible defendant as defined in CPL 216.00, has a history of *447 alcohol or substance use or dependence and such alcohol or substance use or dependence is a contributing factor to defendant’s criminal behavior, and that defendant’s participation in judicial diversion would effectively address his substance abuse or dependence. Nevertheless, given defendant’s criminal history, institutional confinement of defendant is necessary for the protection of the public.
Accordingly, it is ordered that defendant’s application for participation in the Cayuga County judicial diversion program is hereby denied; and it is further ordered that sentencing will be held on a date to be determined by the court.

. Although defendant’s rap sheet does not specify which subdivision of section 29800 (a) defendant pleaded guilty to, the rap sheet specifies that he was charged with violating section 29800 (a) (1). For purposes of this proceeding, the court will consider the plea to be to section 29800 (a) (1) as indicated by the People.

. The People advise in their memorandum of law that they are “endeavoring to obtain certified copies of the transcript of the defendant’s plea and expects to have the same at the appropriate time by which to prove that the defendant, should he be convicted, is a second felony offender.” All that has been submitted in support of the People’s position is the Shasta. County Sheriffs Office investigative notes and an unsworn probable cause declaration.

. However, defendant was not charged with driving while intoxicated here.