*Supreme Court, Appellate Division*
*Third Judicial Department*

Decided and Entered:  January 19, 2017          105760
_____

THE PEOPLE OF THE STATE OF
    NEW YORK,
                    Respondent,

          v                                MEMORANDUM AND ORDER

RAHCIEF COLLIER,
                    Appellant.
_____

Calendar Date:  October 21, 2016

Before:  McCarthy, J.P., Egan Jr., Lynch, Clark and Aarons, JJ.

                    _____


        Kathryn S. Dell, Troy, for appellant, and appellant pro se.

        Joel E. Abelove, District Attorney, Troy (Vincent J.
O'Neill of counsel), for respondent.


                    _____


Clark, J.

        Appeal from a judgment of the County Court of Rensselaer
County (Ceresia, J.), rendered December 6, 2012, upon a verdict
convicting defendant of the crimes of assault in the first
degree, robbery in the first degree (four counts), attempted
robbery in the first degree (two counts), criminal use of a
firearm in the first degree and criminal use of a firearm in the
second degree.

        On October 3, 2011, defendant, along with his accomplice,
devised a plan to rob the male victim, who he lured to a
specified location under the pretext that he wished to purchase
drugs.  The male victim arrived at the prearranged location with
the female victim and, as defendant and his accomplice attempted
to carry out the plan, the male victim was shot in the arm by a

sawed-off shotgun directed at him by defendant. Defendant was subsequently indicted on the charges of attempted murder in the second degree, assault in the first degree, robbery in the first degree (four counts), attempted robbery in the first degree (two counts), criminal use of a firearm in the first degree, criminal use of a firearm in the second degree and the manufacture, transport, disposition and defacement of weapons and dangerous instruments and appliances. The matter proceeded to a jury trial and, upon defendant's motion for a trial order of dismissal at the close of proof, County Court dismissed the charge of manufacture, transport, disposition and defacement of weapons and dangerous instruments and appliances. The case was thereafter submitted to the jury, which ultimately returned a verdict acquitting defendant of attempted murder in the second degree, but finding him guilty of the remaining charges. Defendant was sentenced to an aggregate prison term of 20 years, followed by five years of postrelease supervision. Defendant appeals, and we affirm.

Initially, defendant argues that the police lacked probable cause to arrest him and, thus, that his statements to police should have been suppressed. While defendant made a general, pretrial request for a Dunaway hearing, only a combined Huntley/Wade hearing was held and it is unclear from the record whether defendant withdrew his request for a Dunaway hearing or whether that branch of his omnibus motion was overlooked by County Court. Nevertheless, by either failing to pursue his application for a Dunaway hearing or alert the court that it had overlooked his request, defendant abandoned such request, thereby rendering unpreserved his appellate contention that the police lacked probable cause to arrest him (see CPL 470.05 [2]; People v Bigelow, 68 AD3d 1127, 1128 [2009], lv denied 14 NY3d 797 [2010]; People v Harley, 253 AD2d 699, 699 [1998], lv denied 92 NY2d 1032 [1998]), and we decline to take corrective action in the interest of justice.

Defendant also argues that his convictions are not supported by legally sufficient evidence and are against the weight of the evidence. However, defendant preserved his legal sufficiency argument only with respect to his convictions for attempted robbery in the first degree, as he failed to raise — in

his motion for a trial order of dismissal at the close of proof —
any protests "specifically directed" at the proof supporting his
other convictions (People v Gray, 86 NY2d 10, 19 [1995]; see
People v Keschner, 25 NY3d 704, 721 [2015]).  Nevertheless, we
must, as part of our weight of the evidence review, evaluate
whether the elements of each crime were proven beyond a
reasonable doubt (see People v Danielson, 9 NY3d 342, 349 [2007];
People v Hamilton, 133 AD3d 1090, 1091 [2015]).  In that regard,
where, as here, a different verdict would not have been
unreasonable, we, "like the trier of fact below, weigh the
relative probative force of conflicting testimony and the
relative strength of conflicting inferences that may be drawn
from the testimony" (People v Bleakley, 69 NY2d 490, 495 [1987]
[internal quotation marks and citations omitted]; see People v
Thiel, 134 AD3d 1237, 1238 [2015], lv denied 27 NY3d 1156
[2016]).

As pertinent here, a person is guilty of robbery in the
first degree when he or she "forcibly steals property and when,
in the course of the commission of the crime . . ., he [or she]
. . . [c]auses serious physical injury to any person who is not a
participant in the crime[] or . . . [i]s armed with a deadly
weapon" (Penal Law § 160.15 [1], [2]).  Additionally, a person is
guilty of attempted robbery in the first degree when, with intent
to forcibly steal property, he or she engages in conduct which
tends to do so, and when, in the course of the attempted
commission of the crime, he or she causes serious physical injury
to a nonparticipant in the crime or is armed with a deadly weapon
(see Penal Law §§ 110.00; 160.15 [1], [2]; People v Knox, 137
AD3d 1330, 1330-1331 [2016], lv denied 27 NY3d 1070 [2016]).
Further, a person is guilty of assault in the first degree when,
"[w]ith intent to cause serious physical injury to another
person, he [or she] causes such injury to such person . . . by
means of a deadly weapon or a dangerous instrument" (Penal Law
§ 120.10 [1]).  Finally, a person is guilty of criminal use of a
firearm in the first degree and criminal use of a firearm in
second degree when he or she commits class B and C violent felony
offenses (see Penal Law § 70.02 [1] [a], [b]) and possesses a
loaded, deadly weapon from which a shot "readily capable of
producing death or other serious injury may be discharged" (Penal
Law §§ 265.08 [1]; 265.09 [1] [a]).

Here, the trial evidence established that, on the evening in question, defendant and his accomplice formulated a plan to rob the male victim, who defendant admitted in a statement to police he knew to sell drugs and carry cash. In his written statement to police, which was admitted into evidence,[1] defendant stated that the male victim had "disrespected" him the night before and that he arranged the meeting so that he and his accomplice could rob the male victim. Defendant stated that, after obtaining a gun with a "sawed[-]off" barrel, he approached the victims' vehicle and pointed the gun at the male victim, while his accomplice pulled the female victim out of the vehicle, entered the vehicle, began going through the male victim's pockets and asked the male victim, "Where's the money at?" Defendant asserted that his accomplice and the male victim were "tusslin[g]" inside the vehicle, while he hit the male victim with the wooden part of his gun. Defendant stated that the male victim grabbed the gun, and he "stepped back[,] . . . gave the gun a yank and the gun went off."

Defendant's statements to police were sufficiently corroborated by the testimony of both victims, as well as the responding police officers (see CPL 60.50). The male victim testified that, after defendant contacted him to buy drugs, he and the female victim arrived at the prearranged location and were thereafter approached on opposite sides of the vehicle by defendant and his accomplice. He asserted that defendant approached the driver side of the vehicle — where he was seated — with what appeared to be a "cut[-]down" shotgun, placed the gun roughly six inches from his head and demanded that he give defendant "everything." Both victims testified that defendant's accomplice forcibly pulled the female victim from the passenger side of the vehicle. The male victim stated that defendant's accomplice thereafter leaned inside the vehicle, started grabbing at his possessions, including his cell phone, "money in [his] sweatshirt pocket" and his keys, and successfully pulled his house key and key chain from the set of keys in the ignition. The male victim further testified that defendant hit him in the

_____

[1] A video of defendant's police interview was also admitted into evidence.

head with the gun as he was trying to defend himself and that, as he had his "hand about in front of his face and his elbow bent pointing up," he was shot. As established by physician testimony, three surgeries were required to address the male victim's gunshot wound, the first of which repaired life-threatening damage to his arteries and nerves.

The female victim consistently testified that defendant and his accomplice approached the vehicle on both sides and were yelling "[g]ive me your stuff." She stated that defendant's accomplice "grabbed" her out of the car and took her cell phone, at which point she ran and hid. She testified that she heard a gunshot and witnessed the male victim bleeding from his arm. A responding police officer testified that he heard "a loud bang," came upon the male victim bleeding profusely from his arm and observed a set of keys several yards from the crime scene. Another responding police officer testified that he observed damage to and blood on the vehicle.

Defendant argues that his convictions of attempted robbery in the first degree were not supported by legally sufficient evidence because the proof failed to establish that either he or his accomplice came close to forcibly stealing cash from the victims. We disagree. By all accounts, including defendant's own statements to police, defendant and his accomplice demanded that the male victim turn over his money. While the male victim testified that he had over $4,200 in cash locked in the center console of the vehicle and that he refused to turn this money over, he also testified that defendant's accomplice came in through the passenger side of the vehicle and grabbed at the console and the money in his sweatshirt pocket. Viewing the evidence in the light most favorable to the People (see People v Griffin, 122 AD3d 1068, 1070 [2014], lv denied 25 NY3d 1164 [2015]; People v Horton, 106 AD3d 1192, 1194 [2013], lv denied 21 NY3d 1016 [2013]), and particularly considering that the demands for money occurred while defendant's accomplice was inside the vehicle grabbing at the male victim's possessions and while defendant was pointing a sawed-off shotgun at the male victim and striking him with it, we are satisfied that a valid line of reasoning and permissible inferences existed from which a rational jury could have concluded that, with intent to forcibly

steal property, defendant – independently and through the actions of his accomplice (see Penal Law § 20.00) – engaged in conduct which tended to do so while armed with a deadly weapon and caused serious physical injury to the male victim in the process (see People v Djanie, 31 AD3d 887, 887 [2006], lv denied 7 NY3d 866 [2006]; see generally People v Miller, 87 NY2d 211, 216 [1995]; compare People v Mateo, 13 AD3d 987, 988 [2004], lv denied 5 NY3d 883 [2005]). Viewing the evidence in a neutral light and according deference to the jury's credibility assessments, we are similarly satisfied that defendant's convictions for attempted robbery in the first degree are not against the weight of the evidence (see People v Lewis, 99 AD3d 1104, 1104-1105 [2012], lv denied 21 NY3d 1017 [2013]).

As for defendant's remaining convictions, the trial evidence established that defendant and his accomplice planned the robbery, including obtaining the sawed-off shot gun, and that defendant aided his accomplice in forcibly stealing a cell phone from the female victim and a key and key chain from the male victim, thereby giving rise to the findings of guilt of robbery in the first degree under a theory of accomplice liability (see Penal Law § 20.00; People v Myrick, 135 AD3d 1069, 1070 [2016]). Further, with respect to assault in the first degree, while defendant argued at trial that he did not intend to shoot the male victim, the jury was entitled to reject this defense, as defendant's intent to cause serious physical injury could be readily inferred from the circumstances, as well as defendant's conduct of directing the sawed-off shotgun roughly six inches from the male victim's head, striking the male victim with the gun as he struggled with the accomplice inside the vehicle and shooting the male victim after he grabbed the gun (see People v Carter, 74 AD3d 1375, 1377 [2010], lv denied 15 NY3d 772 [2010]; see generally People v Gibson, 141 AD3d 1009, 1012 [2016]). Finally, the evidence established that defendant committed class B and C violent felony offenses and possessed a loaded, deadly weapon from which a shot was discharged and caused serious injury. Accordingly, deferring to the jury's credibility determinations and having reviewed and weighed the evidence in a neutral light (see People v Launder, 132 AD3d 1151, 1151 [2015], lv denied 27 NY3d 1153 [2016]; People v Nicholas, 130 AD3d 1314, 1315 [2015]), we are satisfied that the verdict as to the

remaining crimes was not against the weight of the evidence.

Defendant also argues that several improper comments made by the prosecution during summation deprived him of a fair trial, including a misstatement that proof of intent was not required to convict him for robbery in the first degree and attempted robbery in the first degree and remarks suggesting that he knew that the firearm was loaded. Defendant, however, objected only to the prosecution's comment that he knew the firearm was a break-barrel gun because he broke it open and, in the process of so doing, saw that it was loaded and, thus, only that claim is preserved for appellate review (see People v Williams, 8 NY3d 854, 855 [2007]; People v Nichols, 257 AD2d 851, 852 [1999], lv denied 93 NY2d 901 [1999]). While the challenged comment indeed appears to have misstated the evidence, we are unconvinced that the misstatement rose to such a level as to deprive defendant of a fair trial (see People v Robinson, 16 AD3d 768, 770 [2005], lv denied 4 NY3d 856 [2005]; People v D'Alessandro, 184 AD2d 114, 118-119 [1992], lv denied 81 NY2d 884 [1993]). Moreover, even if we were to reach defendant's unpreserved challenges, we would not find that the prosecutor's misstatement of the law or other comments deprived defendant of a fair trial, as County Court correctly instructed the jury on the element of intent with respect to the robbery and attempted robbery charges (see People v Bryan, 46 AD3d 1219, 1221 [2007], lv denied 10 NY3d 809 [2008]) and, viewing the summation as a whole, the People did not engage in a pervasive and flagrant pattern of misconduct so as to deprive defendant of a fair trial (see People v Grady, 40 AD3d 1368, 1374-1375 [2007], lv denied 9 NY3d 923 [2007]; People v Richard, 30 AD3d 750, 755 [2006], lv denied 7 NY3d 869 [2006]).

Finally, notwithstanding defendant's young age of 16 at the time that he committed the crimes and his lack of prior criminal history, we do not agree with defendant that his sentence was harsh and excessive, given, among other things, the calculated and violent nature of the crimes and the serious physical injury sustained by the male victim (see People v Morgan, 24 AD3d 950,

954 [2005], <u>lv denied</u> 6 NY3d 815 [2006]).[2]  Nor is there any evidence in the record to substantiate his contention that the 20-year aggregate prison sentence was imposed as a penalty for rejecting a plea offer of 15 years in prison and exercising his right to proceed to a trial (<u>see</u> <u>People v Speed</u>, 134 AD3d 1235, 1237 [2015], <u>lv denied</u> 27 NY3d 1155 [2016]).

Defendant's remaining contentions, including his claimed violation of CPL 710.30, have been reviewed and determined to be without merit.

McCarthy, J.P., Egan Jr., Lynch and Aarons, JJ., concur.

ORDERED that the judgment is affirmed.

ENTER:

Robert D. Mayberger
Clerk of the Court

---

[2]  While not raised by defendant on appeal, we note that County Court expressly considered and determined in its discretion that defendant was ineligible for youthful offender status pursuant to CPL 720.10 (2) (a) (ii) and (3) (<u>see generally</u> <u>People v Marquis A.</u>, 145 AD3d 61, 67 [2016]).