(November 22, 2000)

■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v SCOTT L. DI BELLA, Appellant. [715 NYS2d 777] —Spain, J. Appeal from a judgment of the County Court of Tioga County (Sgueglia, J.), rendered November 16, 1998, upon a verdict convicting defendant of the crime of manslaughter in the second degree.

Defendant was indicted on one count of murder in the second degree based on an incident occurring in the early morning hours of October 19, 1997 at a bar in the Village of Candor, Tioga County. After a hostile verbal exchange between defendant and decedent's friends inside the bar, a fight erupted outside the bar between defendant's brother and decedent and his friends. Defendant became involved and ended up on the ground across the street from the bar, with decedent on top of him. At some point, defendant's brother and at least one other person landed on top of decedent and defendant. Decedent eventually stood up and stated that he had been stabbed. He subsequently died from those injuries. Following a jury trial— where the uncontroverted medical testimony established that the victim died from a stab wound through his chest and into his heart—defendant was convicted of manslaughter in the second degree and sentenced to a term of imprisonment of 5 to 10 years. Defendant now appeals.

We affirm. Defendant first contends that the People failed to disprove his justification defense (*see*, Penal Law § 25.00 [1]; § 35.00). While defendant admitted to stabbing decedent, he testified that he only used the knife because he reasonably believed that he was threatened with death or serious physical injury and that defensive deadly force was necessary to prevent

it (*see,* Penal Law § 35.15 [2] [a]). In support of this defense, defendant relied on evidence introduced at trial that decedent, who was significantly larger than defendant, was on top of defendant with his arm across the side of defendant's neck at the time defendant stabbed him, and defendant's testimony that defendant was losing consciousness. In contrast, the People submitted evidence that defendant stabbed decedent as decedent was standing up and that, in any event, applying pressure to the side of defendant's neck would not have caused loss of consciousness. To the extent that the evidence was in conflict regarding the circumstances under which defendant stabbed decedent, it was for the jury to assess the credibility of the witnesses and resolve conflicting inferences and conclusions to be drawn from the evidence (*see, People v Young,* 240 AD2d 974, 975-976, *lv denied* 90 NY2d 1015). Viewing the evidence in a light most favorable to the People, we conclude that the People sufficiently disproved the justification defense beyond a reasonable doubt (*see, People v Strasser,* 249 AD2d 781, 784, *lv denied* 91 NY2d 1013; *People v Young, supra,* at 975-976; *People v Boyd,* 222 AD2d 314, 314-315, *lv denied* 87 NY2d 970; *People v Durand,* 188 AD2d 747, *lv denied* 81 NY2d 884).

Next, we reject defendant's arguments that the verdict was based on insufficient evidence and is against the weight of the evidence. A person is guilty of manslaughter in the second degree when "[h]e recklessly causes the death of another person" (Penal Law § 125.15 [1]). Here, when viewed in a light most favorable to the People, the evidence established a valid line of reasoning which could lead a rational person to conclude that defendant recklessly stabbed decedent and caused his death (*see, People v Bleakley,* 69 NY2d 490, 495; *People v Contes,* 60 NY2d 620, 621; *People v Fitzgibbon,* 166 AD2d 745, 746, *lv denied* 77 NY2d 838). The testimony demonstrated that defendant made a swinging motion with his arm toward decedent as decedent was standing up, that decedent indicated that he had been stabbed as soon as he stood up and that defendant held something "shiny" and folded something which looked like a knife. Moreover, uncontroverted medical testimony established that decedent died from a stab wound through his chest and into his heart. Thus, it was entirely reasonable for the jury to conclude that defendant recklessly produced a knife and stabbed decedent during the course of the fight, causing his death, supporting a conviction of manslaughter in the second degree (*see, People v Fitzgibbon, supra,* at 746; *People v Costello,* 112 AD2d 478, 479). Nor is the verdict contrary to the weight of the evidence, as the jury was free to credit the People's witnesses who indicated that defendant stabbed decedent as he

was standing up and discredit defendant's testimony that his conduct was in response to his fear of losing consciousness and his life (*see, People v Desordi*, 238 AD2d 738, 739-740, *lv denied* 90 NY2d 904; *People v Lewis*, 165 AD2d 901, 902, *lv denied* 76 NY2d 1022).

Likewise, we are unpersuaded by defendant's contention that County Court abused its discretion in its *Sandoval* ruling (*see, People v Sandoval*, 34 NY2d 371). It is well established that the extent to which prior convictions may be used to impeach the credibility of a defendant is a matter within the sound discretion of the trial court (*see, id.*, at 374). The trial court is charged with striking a balance "between the probative worth of evidence of prior specific criminal, vicious or immoral acts on the issue of the defendant's credibility on the one hand, and on the other the risk of unfair prejudice to the defendant" (*id.*, at 375).

Specifically stating that it had balanced the probative value of the conduct sought to be introduced against possible prejudice to defendant, County Court permitted impeachment of defendant's credibility with the following acts, which defendant ultimately disclosed at trial on direct examination: (1) misconduct, including domestic abuse and fighting, leading to his 1988 general discharge from the Air Force, (2) an incident in September 1995, where defendant beat his second wife causing injuries for which she missed three weeks of work, (3) a 1996 conviction in Alaska for attempting to kidnap his wife, and (4) a subsequent probation violation. While recognizing the trial court's paramount duty to scrupulously protect a defendant against unfair prejudice where the prior bad acts to be utilized for impeachment purposes are similar to the crime charged, we cannot say that permitting cross-examination regarding these acts constitutes an abuse of the trial court's discretion.

Initially, we note that County Court properly concluded that these incidents "manifested a willingness and disposition to place the advancement of his self-interest ahead of the interests of society and [were] highly probative with regard to the issue of credibility * * * notwithstanding the fact that these matters involved threatening and violent behavior [citation omitted]" (*People v Williams*, 256 AD2d 661, 662, *lv denied* 93 NY2d 981; *see, People v Quesnel*, 238 AD2d 725, 727, *lv denied* 90 NY2d 896; *People v Ayala*, 236 AD2d 802, 803, *lv denied* 90 NY2d 855). Moreover, County Court—by permitting inquiry regarding these acts, while excluding other acts to protect defendant against unfair prejudice—struck an acceptable balance be-

tween the right of the People to utilize probative evidence and the rights of defendant. In this regard, the court prohibited the use of an incident which occurred in October 1995 where defendant beat his second wife causing significant injuries, an incident on October 18, 1995 where defendant threatened to kill another soldier and his wife and expressed his desire to die by shooting it out with the police, and the details underlying his 1996 conviction for attempted kidnapping and the probation violation for carrying a concealed weapon. County Court further reduced the chance of prejudice to defendant by providing limiting instructions to the jury (*see, People v Rodriguez*, 85 NY2d 586, 591; *People v Kingsbury*, 256 AD2d 916, 917). Accordingly, we conclude that County Court did not abuse its discretion in rendering its *Sandoval* determination (*see, People v Walts*, 267 AD2d 617, 619, *lv denied* 95 NY2d 859; *People v Brace*, 259 AD2d 782, 783, *lv denied* 93 NY2d 1014; *People v Ayala, supra*, at 803; *People v Lynch*, 209 AD2d 827, *lv denied* 84 NY2d 1034; *cf., People v Mitchell*, 209 AD2d 443, 443-444).

Defendant also claims a number of trial errors, but we find these arguments unavailing. The photographs depicting defendant's physical condition after the fight were relevant to the issue of self-defense (*see, People v Manon*, 226 AD2d 774, 777, *lv denied* 88 NY2d 1022), and defendant's argument that his visible tattoo was unduly suggestive of an aggressive nature is unpersuasive. Defendant's statements to the investigating police officers were properly admitted as they were spontaneous and voluntary (*see, People v Plater*, 235 AD2d 597, 598, *lv denied* 89 NY2d 1039; *People v Poette*, 229 AD2d 796, 796-797, *lv denied* 88 NY2d 1071). Finally, defendant's challenge to the jury charge on reasonable doubt is not preserved for review and, in any event, we detect no error in that charge (*see, People v Pochily*, 255 AD2d 695, 696, *lv denied* 93 NY2d 856) or in the trial court's decision to instruct the jury on consciousness of guilt given the evidence that defendant fled from the scene and discarded evidence of the crime (*see, People v Cunningham*, 222 AD2d 727, 729-730, *lv denied* 87 NY2d 1018).

We have considered defendant's remaining contentions, including his claim that the prosecutor's summation was improper and that he was denied effective assistance of counsel, and conclude that they lack merit.

Mercure, J. P., Carpinello, Graffeo and Mugglin, JJ., concur. Ordered that the judgment is affirmed.