People v Aca (2025 NY Slip Op 51052(U))

[*1]

People v Aca

2025 NY Slip Op 51052(U)

Decided on June 27, 2025

Criminal Court Of The City Of New York, New York County

Shamahs, J.

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and will not be published in the printed Official Reports.

Decided on June 27, 2025
Criminal Court of the City of New York, New York County

The People of the State of New York, Petitioner,

against
Michael Aca, Defendant.

CR-035357-24NY

For defendant: Twyla Carter, The Legal Aid Society (Zoe Harelson-Louie Esq. of Counsel) 
For the People: Alvin Bragg, New York County District Attorney's Office (ADA Courtenay Cullen Esq. of Counsel) 

Elizabeth Y. Shamahs, J.

On November 30, 2024, at approximately 9:45 P.M. underneath Robert F. Kennedy Bridge, defendant, Michael Aca, was apprehended by Officer Reginald Bowers, of MTA Bridges and Tunnels Division (TBTA), after he struck a parked car in Queens County before fleeing by vehicle. Officer Bowers observed defendant sitting in the driver's seat, with the keys in the ignition and the engine running. Officer Bowers also observed defendant to have bloodshot, watery eyes, and a strong smell of an alcoholic beverage from his breath. Defendant additionally made statements to Officer Bowers. Defendant was subsequently removed to the 28th Precinct, where he refused to submit to a breathalyzer.
For these acts, defendant was arrested and charged with one count each of Operating Motor Vehicle While Under the Influence of Alcohol. Vehicle and Traffic Law (VTL) § 1192 (3), and Operating Motor Vehicle While Under the Influence of Alcohol or Drugs. VTL § 1192 (1).
On December 1, 2025, the accusatory instrument was filed, and defendant was arraigned in Criminal Court, before the Honorable Kevin McGrath, where the misdemeanor complaint was converted into a misdemeanor information. The case was adjourned for trial to Part E on January 16, 2025.
On January 16, 2025, at calendar call, the People were not ready for trial and the case was adjourned to March 3, 2025, for trial.
On January 31, 2025, the People shared over one-hundred-and-twenty (120) items of discoverable information, consisting of police paperwork from various units, 911 calls, radio runs, body-worn camera (BWC) videos, law enforcement officer witness disciplinary information, comprising of records from the Internal Affairs Bureau (IAB) of the New York City Police Department (NYPD) and records from the Civilian Complaint Review Board [*2](CCRB), as well as civil information, with defendant, along with other miscellaneous items of discovery.
On February 13, 2025, the People shared more than thirty (30) additional files and items, comprising of officer paperwork and other records, before filing a Certificate of Compliance (COC), Automatic Discovery Form (ADF) and a Statement of Readiness (SOR) the same day.
On February 27, 2025, defense counsel notified the ADA of twenty-four items of purportedly omitted discovery, namely, (1) additional BWC for two officers who were listed in paperwork as not having BWC, (2) additional BWC, or confirmation of the nonexistence of additional BWC, (3) Officer Landon's activity log, (4) CCRB and CPI information for Officers Bowers and Landon, (5) BWC Audit Trail Logs, (6) ICAD, (7) defendant's Arraignment Card, (8) DAS Entity Report, (9) IDTU Logs from the 25th Precinct, (10) Roll Call Logs from the 25th Precinct, (11) Pre-Arraignment Notification Report, (12) ZOLPA, (13) Prisoner Holding Pen Roster, (14) Interrupted Patrol Log, (15) Complete Chain of Custody Report, (16) Surveillance Footage, (17) Dashboard Camera Footage, (18) a video from a witness, (19) photographs taken by law enforcement, namely, of the vehicles during the incident and of defendant's vehicle after being in custody, (20) additional TBTA and Highway Unit paperwork, (21) additional witness information, such as contact information, for non-testifying bystander 911 callers, (22) Medical Treatment of Prisoner form, (23) a Pre-Hospital Care Report, and an (24) Ambulance Call Report.
The assigned ADA was on military leave, from February 27, 2025, to March 2, 2025, and was unable to respond until 9:29 a.m., on March 3, 2025. In her itemized response to defendant's email, she (1) confirmed the nonexistence of the two BWC videos after making additional inquiries as defense counsel requested, (2) confirmed the nonexistence of the additionally requested BWC videos, (3) turned over a new copy of Officer Landon's Activity Log, which was previously turned over, (4) confirmed the nonexistence of CCRB and CPI law enforcement disciplinary records for the two officers, as they are not NYPD officers, (5) confirmed that she previously disclosed BWC evidence audit trail logs, despite the People's position that they do not constitute automatic discovery, and declined to obtain BWC device audit trail logs on the same ground (6) confirmed the nonexistence of the ICAD, (7) confirmed the nonexistence of defendant's arraignment card, (8) noted that Officer Bowers did not create an entity report during the arrest, but was disclosing a NYPD entity report, (9) confirmed the nonexistence of IDTU Logs, (10) confirmed the nonexistence of roll call logs, (11) noted that the pre-arraignment notification report is generated by the NYC Office of Technology and Innovation, and therefore not within the People's constructive possession, and that it was not generated in defendant's case, (12) disclosed the ZOLPA, noting that it was not automatically discoverable, (13) disclosed the prisoner holding pen roster, noting that it was not automatically discoverable, (14) confirmed that the interrupted patrol log did not exist and/or was not in her possession, (15) confirmed that she had disclosed such paperwork, (16) noted that surveillance video did not exist and/or was not in the People's possession, (17) noted that it did not exist and/or was not in the People's possession, (18) noted that the witness video had previously been provided but she was disclosing it again, (19) noted that it did not exist and/or was not in the People's possession, (20) noted that paperwork had been provided, (21) noted that the information had been provided, (22) noted that it did not exist and/or was not in the People's possession, (23) noted that it did not exist and/or was not in the People's possession, (24) noted that it did not exist and/or was not in the People's possession. In addition, the ADA disclosed [*3]those indicated items on that same day. 
At the March 3, 2025, calendar call, in Part E, the People announced that they were ready for trial, had previously filed and served their ADF, COC, and SOR on February 13, 2025, and had one officer witness available to testify that day. Defense counsel noted that he had received the discovery, requested additional discovery a week prior, and that he had received disclosures from the People that morning, but had not received a Supplemental Certificate of Compliance (SCOC) or a new SOR. He additionally informed the Court that there were still outstanding items of discovery, namely the ICAD and 911 caller information. He additionally stated that he did not have any contact information for a 911 representative.
The prosecutor informed the Court of her military duty, noting it to be the reason why she could not respond to defense counsel's email until that day. She further noted that she was going to file a SCOC and SOR regarding the additional disclosures. She additionally asked the Court to render her four-day military leave, from February 27, 2025, to March 2, 2025, as excludable from speedy trial calculations pursuant to Criminal Procedure Law (CPL) §30.30(4)(g), exceptional circumstances, which defendant objected to.
The Court declined to rule on whether those four days should be excluded, noted that the parties needed a motion schedule, and deemed the People not ready for trial, based on the purportedly outstanding discovery. Defense counsel noted that he did not want a motion schedule and asked that the case be adjourned so that the parties could resolve discovery disputes. The case was adjourned to April 3, 2025, for trial and to resolve discovery issues.
On the same date, the prosecutor filed an ADF, COC and SOR, reflecting the March 3, 2025 disclosures, along with disclosing eight belatedly obtained scene photographs.
On March 6, 2025, newly assigned defense counsel notified the prosecutor that her March 3, 2025, COC and SOR were, effectively, a SCOC, and that the People failed to note the reason for the delayed March 3, 2025 disclosures. This, she argued, rendered the March 3, 2025 COC, or SCOC, defective.
On March 7, 2025, the prosecutor filed a SCOC reflecting the same March 3, 2025 disclosures, and noting the reason why they had not been turned over previously. The SCOC reflects that the belated disclosures could not have been turned over, from February 27, 2025 to March 3, 2025, because of her assigned military leave.
At the April 3, 2025 court appearance, defense counsel requested a motion schedule to challenge the People's initial COC and their subsequent SCOCs, which was granted.
On April 22, 2025, defense counsel notified the prosecutor of additional purportedly omitted discovery, namely, accomplice information, which the prosecutor subsequently disclosed on April 24, 2025.
Now, in papers dated, April 24, 2025, defendant, through counsel, moves this Court for an Order (1) deeming the People's initial February 13, 2025 COC invalid, and its accompanying SOR illusory, deeming the People's subsequent SCOCs and SORs invalid and illusory, citing the March 3, 2025, belatedly disclosed materials, and also alleging that there remain outstanding materials; (2) dismissing the misdemeanor information on the ground that the People have denied him the statutory right to a speedy trial.
Additionally, on April 24, 2025, by omnibus motion, defendant moves this Court for (1) suppression of tangible, intangible, and testimonial evidence, or a Mapp/Dunaway/Johnson hearing in the alternative; granting the suppression of evidence related to defendant's refusal to submit to chemical testing; granting Atkins/Capraella and Victory hearings; suppressing [*4]statement evidence, or granting a Huntley hearing in the alternative; granting a pre-trial voluntariness hearing; preclusion of evidence; the Court to direct the People for timely compliance of discovery; for a Bill of Particulars; for the preservation of evidence; for additional evidence; for the People to file an additional COC; for a Sandoval hearing; and reservation of rights.
The People oppose defendant's motions, in response papers, dated May 23, 2025, and additionally cross-move for discovery. Defendant filed a reply to the People's papers on May 29, 2025.
After a thorough review of the parties' moving papers, along with the annexed exhibits therein, the court file, and the court minutes, the Court's Opinion is as follows:
MOTION CHALLENING THE CERTIFICATE OF COMPLIANCE
Defendant moves to invalidate the People's February 13, 2025 COC and the People's subsequent COCs/SCOCs, on the ground that items were belatedly disclosed or not disclosed. Specifically, he argues that the belated disclosures of photographs of alcoholic beverages, photographs of vehicle damage, a witness video, license plate reader information, a witness license, the prisoner holding pen roster, the ZOLPA, and NYS Driver Safety Record disclosed to defendant, on March 3, 2025, rendered the February 13, 2025 COC invalid. He also argues that there is additional automatic discovery under CPL §245.20, still outstanding, namely, accomplice information, BWC device audit trail logs, DAS entity report, defendant's arraignment card, IDTU logs, roll call logs, interrupted patrol logs, and a complete chain of custody report (Defendant's Motion ¶12).
The People oppose the defendant's COC challenge and assert that the COC was proper, filed in good faith and with the exercise of due diligence, having conducted reasonable inquiries to ascertain the existence of discoverable material prior to filing the COC, and that the belated disclosures, and subsequent COCs/SCOCs, do not vitiate the validity of the original COC. They additionally argue that, in any event, many of the belatedly disclosure items, and defendant's claimed undisclosed items, do not constitute automatic discovery, and consequently cannot vitiate the propriety of the initial COC (People's Response).
CPL Article 245 requires the People to disclose to a defendant "all items and information that relate to the subject matter of the case and are in the possession, custody or control of the prosecution or persons under the prosecution's direction or control," and provides a non-exhaustive list of materials subject to "automatic" disclosure. CPL § 245.20(1). Pursuant to CPL §245.20(2), the People are required to "make a diligent good faith effort to ascertain the existence of material or information discoverable under [CPL §245.20(1)] and to cause such material or information to be made available for discovery where it exists but is not within the prosecutor's possession, custody or control." 
The People must also certify their discovery compliance in writing by filing a COC. The COC must "state that, after exercising due diligence and making reasonable inquiries to ascertain the existence of material and information subject to discovery, the prosecutor has disclosed and made available all known material and information subject to discovery. It shall also identify the items provided." CPL §245.50(1). If the People provide additional discovery in connection with their ongoing obligations outlined in CPL § 245.60, they must file "a supplemental certificate" that "identif[ies] the additional material and information provided." CPL §245.50(1). A SCOC will not impact the validity of the original COC if filed in good faith and after exercising due diligence or when the additional discovery did not exist when the initial COC was filed. See CPL [*5]§245.50(1-a).
Once the People file a COC, a defendant must notify the People of any potential deficiencies in the COC "as soon as practicable," and shall also file any challenges to a COC by motion "as soon as practicable." CPL §245.50(4)(a)-(c). Significantly, the statute further specifies that "[n]o adverse consequences to the prosecution or the prosecutor shall result from the filing of a certificate of compliance in good faith and reasonable under the circumstances; but the court may grant a remedy or sanction for a discovery violation as provided in [section 245.80]." CPL §245.50(1). Any such remedy or sanction must be "appropriate and proportionate to the prejudice suffered by the party entitled to disclosure." CPL §245.80(1).
As the Court of Appeals held in People v Bay, 41 NY3d 200 (2023), "the key question in determining if a proper COC has been filed is whether the prosecution has exercised due diligence and made reasonable inquiries to ascertain the existence of material and information subject to discovery." Id. at 211 (internal quotation marks omitted). Notably, "[a]rticle 245 is not intended for use as a 'sword,' whereby [ADAs] are expected to run themselves ragged in at times futile or near-futile attempts to procure material in which defense counsel has no substantive interest beyond exhausting the People's statutory speedy trial time or hoping that the People, in frustration, opt to abandon the prosecution." People v Barrios, 82 Misc 3d 606, 613 (Crim Ct Bronx Co 2024); see also People v Thompson, 79 Misc 3d 1220(A), *2 (Crim Ct Kings Co 2023) (article 245 "does not require the impossible; it does not demand that every scrap of discoverable information be turned over before the People may file a [COC]") (internal quotation marks omitted).
Rather, due diligence is a "flexible standard that requires the People to make reasonable efforts to comply with statutory directives." Bay, 41 NY3d at 211 (internal quotation marks omitted). "Reasonableness, then, is the touchstonea concept confirmed by the statutory directive to make 'reasonable inquiries.'" Id. at 211-12. Moreover, the Court recognized that, "[a]lthough the relevant factors for assessing due diligence may vary from case to case, courts should generally consider, among other things:" (1) "the efforts made by the prosecution and the prosecutor's office to comply with the statutory requirements;" (2) "the volume of discovery provided and outstanding;" (3) "the complexity of the case;" (4) "how obvious any missing material would likely have been to a prosecutor exercising due diligence;" (5) "the explanation for any discovery lapse;" and (6) "the People's response when apprised of any missing discovery." Id. at 212. 
Importantly, the Bay decision made clear that, in assessing the validity of a COC, the reviewing court should engage in a "holistic assessment of the People's efforts to comply with the automatic discovery provisions, rather than a strict item-by-item test that would require [a court] to conclude that a COC is improper if the People miss even one item of discovery." People v Cooperman, 225 AD3d 1216, 1220 (4th Dept 2024); see also People v Williams, 224 AD3d 998, 1006-07 (3d Dept 2024) (People's COC was valid even though three discoverable items had not been disclosed where People provided "extensive" discovery before filing COC, identified missing items when they filed the COC, and acknowledged their duty to provide missing items upon receipt).
Furthermore, certain delays or discovery issues should not invalidate a COC that was made in good faith, after the exercise of due diligence and efforts made by the prosecution to comply with statutory obligations. Bay at 210-213. If the delay is a result of oversights in the production of material, delayed discovery of the existence of certain items, a good faith position [*6]that the material in question was not discoverable, or voluminous files, the Bay decision clearly posits that a court should apply a "holistic assessment" of the efforts made by the People to comply with their discovery obligations when evaluating the validity of a COC. Id. Moreover, several courts have found that certain delays or discovery issues should not invalidate a COC that was made in good faith, after the exercise of due diligence, and where, for example, the delay was a result of oversights in the production of material, delayed discovery of the existence of certain items, voluminous discovery, non-existent items, or material unrelated to the case. People v Cano, 71 Misc 3d 728 (Sup Ct, Queens County 2020); People v Lustig, 68 Misc 3d 234 (Sup Ct, Queens County 2020) (Zayas, J.)(court found the People's certificate of compliance to be valid, since it was clearly filed in good faith under CPL § 245.50(1) and, therefore, no adverse consequence to the prosecution should result from the fact that the certificate was filed prior to the disclosure of the database search results).
After a thorough review of the moving papers, court file, COC, and supplemental COCs filed, the Court applied a "holistic assessment" of the People's efforts to comply with their discovery obligations, being mindful that perfection is not required. See Bay, 41 NY3d at 212. Here, the People's discovery list demonstrates that they initially disclosed well over 120 items prior to certifying compliance. That disclosure included activity logs, BWC footage, arrest paperwork, driving while intoxicated paperwork, law enforcement disclosures, audio relating to tapes and electronic recordings of 911 calls and more, demonstrating good faith and due diligence. The People's initial disclosures were extensive and voluminous, especially in comparison to the belatedly disclosed and undisclosed materials that defendant cites (Defendant's Motion ¶12). After defense counsel requested additional discovery on multiple dates, the People were responsive to those requests and the Court's directive to resolve any potential discovery lapses as they made various attempts to provide defense counsel with requested materials and did so. This is even true for items that the People contend are not subject to discovery but disclosed them regardless, as a courtesy to defendant, leaving the only outstanding materials those that the People contend either do not exist and/or are not discoverable (People's Response). Taken together, this demonstrates that the People's initial COC, and subsequent COCs/SCOCs, made in good faith and after exercising due diligence, were valid and proper.
In any event, this Court finds that a majority of documents defendant claims as belatedly disclosed or undisclosed disclosed are not subject to automatic discovery under CPL §245.45. Consequently, the failure to provide these materials with the initial COC cannot disturb its propriety. Addressing defendant's cited piece of discovery ad seriatim, this Court holds that the following are not automatically discoverable for the reasons stated below:
Holding Pen Roster/ Pen Holding Roster
Defendant claims that the belatedly disclosed prisoner holding pen roster is subject to automatic discovery under the statute (Defendant's Motion ¶12). It is not. The holding pen roster is a handwritten log that lists all the prisoners in the precinct on the day of the defendant's arrest and documents the names of the officers that guarded each prisoner. People v JMW 83 Misc 3d 1289(A) (Sup Ct Kings Co 2024); People v McMillian, 84 Misc 3d 1211(A) (Sup Ct Kings Co 2024). It reflects the time that a defendant was placed in a holding cell and tracks defendant's movements if he was taken out or returned. In some instances, the holding pen roster also notes [*7]observations made by these officers about the prisoners such as whether they were "sitting alert" or "asleep." This form is filled out by NYPD patrol/sergeant's desk at the precinct. Id. Similarly, a pen holding roster is filled out by the detective squad and reflects when a defendant is taken out and returned to the detective squad holding cell for events such as precinct interviews. Because these documents do not contain witness statements and do not relate to the subject matter of the case, they are not discoverable.
ZOLPA / Prisoner Arraignment Database /Arrest to Arraignment Report
Defendant also argues that the belatedly disclosed ZOLPA vitiated the initial COC's validity. The ZOLPA, otherwise known as the prisoner arraignment database or the arrest to arraignment report, is a police-generated document that notes a defendant's location from police custody in the precinct to his release after arraignment. It reflects how long a defendant was in custody and where he was lodged prior to being arraigned. People v JMW 83 Misc 3d 1289(A) (Sup Ct Kings Co 2024). This document is an administrative record and does not contain information related to the subject matter of the case. People v Young, 86 Misc 3d 1201(A) (Crim Ct Kings Co 2025). Accordingly, it is not subject to automatic discovery.
BWC Audit Trail Logs
Defendant also claims that the failure to provide BWC device audit logs vitiates the initial COC's propriety and that he is entitled to it. This claim fails. This Court holds that BWC audit trails and their associated logs are not subject to automatic discovery. Audit trails and their logs are "system metadata" or "an automated set of chronological records of system activities." Vargas v Lee, 2015 NY Slip Op 31048(U), *4 (Sup Ct Kings Co 2015) (Dabiri, J.), rev'd on other grounds, 170 AD3d 1073 (2d Dept 2019). They reflect "automatically generated information about the creation or revision of a document . . . or the date and time of its creation or modification." People v Larkin, 72 Misc 3d at 663; see also People v Smith, Kings Co Ind. No. 1866/2019, *3-4 (Sup Co Kings Co 2020) (audit trails "describe the history, tracking or management of an electronic [file]") (internal quotation marks omitted). Unlike the camera footage itself, system metadata such as audit trails do not contain factual information about the charged crime or the perpetrator; it is not created or produced by law enforcement for use as an investigative tool to advance the prosecution." People v Soto, (Crim Ct Bronx Co 2021). See also People v. Gary Yerganian, Queens Co. Ind. No. 73090/2022, *9-10 (Sup Ct Queens Co 2024).
In that regard, the audit trail reports are comprised of information based on the software of Axon, a third-party company contracted to provide the NYPD with BWC and related software.[FN1]
People v Ballard, 82 Misc 3d 403 (Crim Ct Queens Co 2023). There are several different types of audit trails, including device, evidence, and user, but all these reports are [*8]generated by information maintained by Axon regarding the usage of its cameras and software system and are automatically uploaded into a cloud storage system. Id. The device audit trail report contains information related to issues such as a camera's battery life and available memory space, that a button was pressed to start and stop recording, or that it was placed on a charging dock, or connected to a charger. Id. The evidence audit trail reports contain information reflecting that footage was successfully uploaded into Axon's cloud-based storage system, whether there was any malfunction with a particular camera, or that an individual user recorded or subsequently watched a video. Id. In addition, evidence and user audit trails record the tags, labels, and categories that be added by members of the NYPD for the main purposes of retention and classification such as "arrest," "homicide," "car stop," and "summons" either by drop-down list or fillable format. Id.
For these reasons, this Court finds that because the audit trails are automatically generated by third-party company, Axon, and are system metadata, they are neither law enforcement reports, nor have they been seized on or on the behalf of law enforcement under CPL §245.20(1)(u)(i)(b). They are likewise not tapes and other electronic recordings under CPL §245.20(g). They also do not contain statements of a potential witness under CPL §245.20(1)(e), because the tags and labels that can be added by members of the NYPD are comparable to the pre-digital days where an officer might have placed crime scene photographs into a manilla folder, labeling the folder itself with labels such as "crime scene," or "ECT." See People v Mateo Garcia-Jacky, Docket No CR-019962-23QN (Crim Ct Queens Co 2023) (Battisti, J.) ("tags are simply digital versions of traditional file folder labels one might attach to the hard copy of a report or photograph, having nothing to do with the subject matter of the case within the meaning of Article 245). Additionally, the audit trail logs do not relate to the subject matter of the case. See People v McMillian, 84 Misc 3d 1211(A) (Sup Ct Kings Co 2024) (holding that audit trail logs do not contain relevant information and do not relate to the subject matter of the case); People v Charles, Queens Co Ind No 73371/2023, *5 ("audit trails are essentially "data on data" and thus "offer no additional information regarding the subject matter of the case"). Accordingly, audit trails and their associated logs and reports are not discoverable.
In addition, this Court declines to open the door to potential future litigation with respect to third-party metadata. If this Court were to hold that audit trail logs are automatically discoverable, then defendant's hypothesis would equally apply to metadata stemming from every software and hardware company that a law enforcement agency utilizes on a day-to-day basis with respect to a defendant. This cannot be what the Legislature intended and would make the prosecution of cases functionally untenable and unworkable. See People v Leon, 10 NY3d 122 (2008) (declining to give interpretation to statute that would lead to "unworkable results"); People v Crespo, 32 NY3d 176, 183 (2018) (courts should construe statutes to avoid "an unreasonable or absurd application of the law"). For these reasons, this Court holds that audit trail logs are not subject to automatic discovery.
DAS Import/Entity Report
Next, defendant also claims that he is entitled to a DAS Import/Entity Report. He is not. The NYPD's Domain Awareness System (DAS), "is a central platform used by the NYPD to collect data about criminal defendants (or, in some cases, witnesses) which searches, among other police department sources, crime reports, license plate readers, and a network of cameras. [*9]People v Lustig, 68 Misc 3d 234, 239 (Sup Ct Queens County 2020) (Zayas, J) (internal quotation marks omitted). In this vein, the DAS Import/Entity Report, also known as a record snapshot, are sometimes, but not always, run or created, by the arresting officer or case detective as an internal document, not intended for public use. These entity reports are a snapshot summary of information gathered from public databases related to a person of interest, usually the defendant or a complaining witness. The reports include a disclaimer that, "this entity report attempts to find and consolidate all of the NYPD's records about a person across many different data sources by using names, dates of birth, addresses, phone numbers, identification numbers (NYSID, SSN), and other data points. This report may fail to incorporate records of the person of interest and/or incorrectly include records relating to a different person. As a result, all data in this report should be independently verified before any police action is taken. Please contact the ITB Help Desk at 646-610-MISD (6473) to report any errors or inconsistencies in this report." People v Lampe, 84 Misc 3d 1203(A) (2024). Based on the process in compiling the document, as well as the document's description, this Court finds that this document, therefore, does not contain information related to the subject matter of the case and is not discoverable. See also People v Arroyo, 78 Misc 3d 1239(A) (Crim Ct NY Co 2023) ("while such records could possibly relate to the subject matter of a case, it is not apparent that they do").
Arraignment Card
Defendant also claims that defendant's arraignment card remains outstanding. In support of this claim, he argues that this document is create in every case by the NYPD and is therefore imputed to be in the People's possession. The Court disagrees. The arraignment card is a court document and therefore, not in the People's possession or control. People v Young, 86 Misc 3d 1201(A) (Crim Ct Kings Co 2025). Accordingly, it is not discoverable.
Roll Call Logs
Defendant also claims that he is entitled to roll call logs. Roll call logs are a list of officers on duty at the precinct on any given date. They show the department personnel's scheduled work time, their rank, and their assignments. "[T]he roll call log is essentially a timesheet for a particular precinct and the information contained therein is not case specific. It does not, for example, provide any information regarding what arrests the officers participated in nor provide any information specific to the defendant or the defendant's arrest." People v JMW. 83 Misc 3d 1289(A) (Sup Ct Kings Co 2024); see also People v Roman, 85 Misc 3d 1210(A) (Crim Ct Bronx Co 2025). Therefore, the roll call log does not provide information related to the subject matter of the case and is not subject to automatic discovery.
Interrupted Patrol Log
Finally, defendant's claim that the interrupted patrol logs are still outstanding is also meritless. The interrupted patrol log is a physical precinct log that contains entries detailing whenever a patrolling officer leaves his or her post and comes back to the precinct, such as when they need to use the bathroom or gather their personal effects. This document "has nothing to do with the subject matter of the case" and is "related to the arrest processing, custody, and arraignment of [defendant] and [is an] administrative document[s] which deal[s] with the [*10]mechanical operation of the criminal justice system." People v Arbaszewski, 85 Misc 3d 1218(A) (Sup Ct Queens Co 2025). Accordingly, this Court finds that it is not related to the subject matter of the case and not discoverable.
Accordingly, as to the aforementioned documents, this Court finds that they are not subject to automatic discovery under the statute, and that defendant's claims as to these items are denied as meritless. Even if they do constitute automatic discovery under the statute, however, this Court would still decline to invalidate the People's initial COC, and subsequent COC/SCOC, for all the reasons stated infra in this Decision.

***
Defendant's additional claims and cited items of discovery also fail for different reasons. Firstly, defendant's request for IDTU Logs (Defendant's Motion ¶12) is vague, overbroad, and requires clarification as to the exact document defendant seeks and how it relates to the subject matter of the case. See People v Wilber S, 83 Misc 3d 1293(A) (Crim Ct Queens Co 2024). Secondly, defendant's claim that he is missing a complete chain of custody report (Defendant's Motion ¶12) is denied because the prosecutor provided the copy that they had. Thirdly, defendant's claim that he has not received accomplice information is unavailing because, as he himself acknowledges, he received this information from the prosecutor on April 24, 2025 (Defendant's Motion ¶12). And notably, a review of defendant's annexed exhibits demonstrate that counsel did not request accomplice information until April 22, 2025 — two months after the initial COC — which can hardly be considered "as soon as practicable" as the statute requires. CPL § 245.50(4)(a)-(c). Accordingly, this Court will not entertain this claim as it was validly waived.
Assuming arguendo, however, that it was not waived, this Court would still deny the claim because defendant's passenger is not a co-defendant, cross-defendant, or cross-complainant and there has been no particularized claim that there contain witness statements or any relevant information therein that relates to the subject matter of the case. Even if there were, this Court would still decline to invalidate the People's COC given that it was proper and made in good faith after exercising due diligence. This is especially true in a case such as this where he has failed to show prejudice — as he must — to be entitled to a remedy or sanction under CPL §245.80. Here, defendant cannot establish that he has been prejudiced because he simply has not been. There has been no hearing or trial, no witness has been sworn, and defendant has not received "any evidence or information that he had not received or that he had received too late to use effectively." People v Elmore, 211 AD3d 1536 (4th Dept 2022). 
The Court now addresses defendant's remaining items, namely the belatedly disclosed photographs of alcoholic beverages, photograph of damage to the vehicle, license plate reader, Ms. Acevedo's license, and the NYS Driver Safety Record. Without more particularized information about each individualized item and how it relates to the subject matter of the case, this Court can only determine that the photographs constitute automatic discovery under the statute that should have been disclosed with the initial COC. But assuming arguendo that all five of these items were subject to automatic discovery and should have been disclosed with the initial COC but were disclosed belatedly, this Court still declines to invalidate the People's initial COC and subsequent SCOC.
Indeed, as initially outlined above, "belated disclosures should not invalidate a [COC] that was made in good faith after the exercise of due diligence where the delay resulted from, for example, minor oversights in the production of material, delayed discovery of the existence of [*11]certain items, or a good faith position that the material in question was not discoverable." People v Perez, 73 Misc 3d 171, 176 (Sup Ct Queens Co 2021). And here, the People's COC was valid where the People exercised due diligence, "as evidenced by the extensive, voluminous documents" initially provided, and the People's belated disclosures, which were "minimal, insignificant, and voluntarily provided to the defense once the People were made aware of the existence of the undisclosed material," were made in good faith. People v Macaluso, 230 AD3d 1158 (2d Dept 2024) See also People v Williams, 224 AD3d 998, 1006-07 (3d Dept 2024) (COC valid even though three discoverable items had not been disclosed where People provided "extensive" discovery before filing a COC, identified missing items when they filed the COC, and acknowledged their duty to provide missing items upon receipt); People ex rel. Nieves obo Taipe v McGinley-Liddie, 2024 WL 4660126 (2d Dept November 4, 2024) (COC upheld where People disclosed additional materials after filing it); People v Pondexter, 76 Misc 3d 349, 356 (Crim Ct NY Co 2022) ("once alerted to the single missing document—which was of minimal importance—the People immediately sought and disclosed it and provided a reasonable explanation for its belated production").
As noted above, defendant hasn't received "any evidence or information that he had not received or that he had received too late to use effectively." People v Elmore, 211 AD3d 1536 (4th Dept 2022) and is entirely unprejudiced as a result. For all these reasons, this Court finds that even if the items determined supra as undiscoverable were, in fact, discoverable, that defendant's claims still fail and are properly denied.
This Court also finds that defendant "incorrectly conflates the People's obligations — clearly set forth by the Legislature — to disclose [statutory materials] with an obligation to go on a wild goose chase for [material] that may exist somewhere — or that may not". People v Edwards, 77 Misc 3d 740 (Crim Ct Bronx Co 2022). As outlined above, Article 245 of the CPL is not intended to be used as a sword and ADAs do not have to "run themselves ragged" to obtain futile or near futile pieces of discovery that defense counsel has "no substantive interest beyond exhausting the People's statutory speedy trial time or hoping that the People, in frustration, opt to abandon the prosecution." People v Barrios, 82 Misc 3d 606, 613 (Crim Ct Bronx Co 2024). To that end, defense counsel cannot send the prosecutor on endless hunting campaigns into the wilderness in search of a mythical golden goose and when the prosecutor has weariedly returned from their arduous expedition — either clutching the mythical golden goose in tow, or more likely confirming its nonexistence — he cannot turn around having now expended statutory speedy trial time by exclaiming, "Gotcha! 30.30!" while reaping the windfall of dismissal. To hold otherwise would be to "countenance a defendant to ha[ve] their cake and eat it too." People v Tarsia, 50 NY2d 1, 8-9 (1980). Litigation is not a game and "discovery is not meant to be a game of 'gotcha' with the prosecution" People v Ferrer, NY Slip Op 50706(U) (Crim Ct Bx Co 2021). The mere fact that the prosecutor then entertained defendant's numerous requests for additional discovery — even those they do not believe to be discoverable and those of minimal importance — only demonstrates their seriousness in prosecuting the case and in complying with their discovery obligations and does not detract from an initial COC's validity, even when SCOCs are subsequently filed. Accordingly, for all the reasons discussed extensively throughout, this Court finds that People's initial COC, and subsequent COCs/SCOCs, were valid and proper.
Defendant's related claim that the COC and accompanying SOR filed on March 3, 2025, with defendant's requested belated disclosures, is defective and inadequate because it was, in [*12]essence, a SCOC, and failed to relay the reason for its original nondisclosure, as required under the statute, is without merit and denied. As established, the People's initial COC and SOR were valid and proper. Then, the People provided the reason for the March 3, 2025 COC and SOR belated disclosures at calendar call on the same day, to the Court and defense counsel, before filing the March 3, 2025 COC. Thus, the requirement under the statute was met and the March 3, 2025, COC, or SCOC, was not defective on this ground. Accordingly, the SCOC filed on March 3, 2025, was proper and valid, along with the duplicative March 6, 2025 SCOC made to reflect the reason for the belated March 3, 2025 disclosures.
In sum, after a thorough review of the moving papers, court file, COC, and supplemental COCs filed, the Court applied a "holistic assessment" of the People's efforts to comply with the discovery. The People have demonstrated that they acted in good faith and exercised due diligence by describing the detailed actions they took to comply with discovery obligations. They meaningfully addressed and delineated the items listed in the defendant's papers. For the aforementioned reasons, the Court finds that the People have in fact complied with their discovery obligations pursuant to CPL §245, and therefore, the COCs are valid. Accordingly, the defendant's motion to invalidate the People's COC filed on February 13, 2025 is denied. Defendant's remaining contentions are denied as meritless.

DEFENDANT'S MOTION TO DISMISS PURSUANT TO SPEEDY TRIAL
Defendant moves this Court to dismiss this action on the basis that he has been denied his right to a speedy trial, claiming that the People have exceeded their statutory speedy trial allowances under CPL §30.30. In support of his claim, he argues that the People are attributable with well over their 90-day limit, and that the People — having repeatedly failed to validly declare their readiness on February 13, 2025, March 3, 2025, and March 7, 2025, to the present — are attributable with 121 chargeable days, from the commencement of the criminal action on December 1, 2024, to April 3, 2025, the day the Court set a motion schedule. The People oppose, contending that they have not exceeded their statutory allowances and are within their 90-day window, with 88 chargeable days when accounting for periods the trial court determined them unready and periods where they rely on a statutory exclusion.
To prevail on a motion to dismiss under CPL §30.30 (1)(a), a defendant must present sworn allegations of fact establishing an unexcused delay that exceeds the statutory limit. People v Allard, 28 NY3d 41 (2016); People v Cortes, 80 NY2d 201, 215-216 (1992); People v Santos, 68 NY2d 859, 861 (1986); People v Lomax, 50 NY2d 351, 357 (1980). At a minimum, the defendant must claim that the People failed to announce their readiness for trial within the statutorily prescribed period to meet their initial burden. People v Beasley, 16 NY3d 289, 292 (2011); People v Allard, 28 NY3d 41 41 (2016); People v Luperon, 85 NY2d 71 (1995). Once the defendant has asserted that more than the statutorily prescribed time period has elapsed since the commencement of a criminal action without a valid declaration of readiness from the People, the People bear the burden of establishing sufficient excludable delay. People v Berkowitz, 50 NY2d 333 (1980).
Pursuant to CPL §30.30(1)(b), the People must be ready for trial within "ninety days of the commencement of the criminal action" where a defendant is charged with "a misdemeanor punishable by a sentence of imprisonment of more than three months " See CPL §30.30(1)(b). Here, the criminal action commenced, on a misdemeanor with a sentence of imprisonment of more than three months, on December 1, 2024, where the accusatory instrument was filed and [*13]defendant arraigned the same day, so speedy trial began to run the same day with an allowable ninety-days.
At all times until the People announce that they are ready for trial, the People are chargeable with the time that elapses unless they can show that the specific delay is not chargeable to them pursuant to an exception enumerated in the statute. CPL §§ 30.30(1), (4); People v Torres, 205 AD3d 524, 525-26 (1st Dept 2022). Moreover, under the newly enacted discovery laws defined in CPL Article 245, the People's compliance with their discovery obligations is now a prerequisite to asserting trial readiness. See CPL §§ 245.50(3); 30.30(5). Specifically, CPL §245.50(3) states that "the prosecution shall not be deemed ready for trial for purposes of §30.30 of this chapter until it has filed a proper certificate pursuant to subdivision one of this section." CPL §30.30(5) provides that "[a]ny statement of trial readiness must be accompanied or preceded by a certification of good faith compliance with the disclosure requirements of section 245.20."
Once the People have met this statutory predicate by filing a proper COC, an accompanying statement of readiness is "presumed truthful and accurate and that a defendant who challenges such a statement must demonstrate that it is illusory" People v Brown, 28 NY3d 392 (2016). Thus, "[i]n the absence of proof that [a] readiness statement did not accurately reflect the People's position ..., the People [have] discharged their duty under CPL 30.30" People v Carter, 91 NY2d 795 (1998)).
The law distinguishes between delays occurring before the People have announced their readiness for trial from those that occur after the People have announced ready. People v Anderson, 66 NY2d 529, 534 (1985). While pre-readiness delays are excludable only if the People can establish that they fit within a category specifically excludable by statute, post-readiness delays are charged to the People only if they actually cause the People to become not ready for trial and are not specifically excludable by statute. People v Cortes, 80 NY2d 201, 210 (1992); Anderson, 66 NY2d at 534. And once in the post-readiness context of the case, the People will only be charged with delays that are attributable to their inaction and that directly implicate their ability to proceed to trial. People v Nielsen, 306 AD2d 500 (2d Dept 2003). 
With respect to the post-readiness posture, the burden shifts to defendant to show that delays occurred under circumstances that should be charged to the People. Cortes, 80 NY2d at 215-16; Anderson, 66 NY2d at 541; People v Collins, 82 NY2d 177 (1993); see also CPL § 210.45(7). However, it is the prosecution's burden, in the first instance, to ensure the that the record of the proceedings with respect to adjournments is clear as to who is attributable with any delay to allow courts to make an informed decision on a 30.30 motion. Cortes, 80 NY2d at 215-16; People v Collins, 82 NY2d 177 (1993). In addition, the People are not required to declare their readiness repeatedly through the pendency of a criminal action. Cortes, 80 NY2d at 214.
Cognizant of all the relevant and applicable standards of law, and after reviewing the parties' submissions and their annexed exhibits, along with the court minutes, the Court's speedy trial computation and analysis is as follows:
The criminal action was commenced on December 1, 2024, upon the filing of the accusatory instrument, and defendant was arraigned on the same day, where the accusatory instrument was converted into a Criminal Court information. The case was adjourned for trial on January 16, 2025. The date of reckoning is excluded from the computations. People v Stiles, 70 NY2d 765 (1987). (46 days charged, 46 days total).
On January 16, 2025, the People were not ready for trial and the case was adjourned for [*14]trial until the next court date of March 3, 2025. In the interim, on February 13, 2025, the People filed an off-calendar statement of readiness and a proper COC with 74 days chargeable, bringing the case into the post-readiness context. (28 days charged, 74 days total).
Next, at the March 3, 2025 calendar call, the People maintained their prior declaration of readiness, noting that they had one witness available to testify that day, and that a COC and SOR had been filed on February 13, 2025. Defense counsel informed the Court that he had reviewed the discovery, requested and received additional discovery, and that there remained discovery still outstanding, and that he had not received a SCOC. Citing outstanding discovery, the Court deemed the People not ready for trial, informing defense counsel that he needed a motion schedule. Counsel declined a motion schedule, requesting that the case be adjourned so that the parties could resolve discovery disputes. The case was adjourned to April 3, 2025, for trial and to resolve discovery issues.
With respect to the March 3, 2025 calendar call, this Court now addresses how many days, if any, are attributable to the People based on the Court's determination that the People were not ready for trial on March 3, 2025.
Firstly, at issue is the time period between February 13, 2025, the date the People filed their statement of readiness and proper COC, to March 3, 2025, the date the Court deemed their readiness insufficient. This Court holds that the People are chargeable with 0 days for this period, as the People validly declared their readiness on February 13, 2025, having filed a COC that was proper under the statute, with an accompanying statement of readiness, presumed truthful and accurate, and absent any showing that it did not accurately reflect the People's position at the time of the filing. Therefore, the People were ready for trial during this entire period, bringing the case into the post-readiness context. Accordingly, the time period of February 13, 2025 to March 3, 2025 is excluded. (0 days charged, 74 days total)
Secondly, this Court holds that the March 3, 2025 determination that the People were not ready for trial, on March 3, 2025, was erroneous and reverses that determination. As noted, the People filed a valid and proper COC on February 13, 2025. Even if it had not been, however, the Court should have still deemed the People ready for trial at the March 3, 2025 calendar call. That is because, as noted above, a statement of readiness is presumed truthful and accurate. Brown supra at 405. Indeed, the People represented to the Court that they were ready for trial, having filed a COC after completing their discovery obligations, and had a witness available to testify that very day, demonstrating that they were ready to proceed to trial on that date. Defense counsel's representation was that there was outstanding discovery. However, nothing about the People's actions and representations to the Court suggested that their readiness statements made on February 13, 2025 and March 3, 2025 were anything other than truthful and accurate or that those statements did not accurately reflect the People's position. Brown supra.
And while the Brown Court did not specifically elucidate the rationale behind the holding, the ruling mirrors long-standing precedent reflecting "the broader presumption of regularity applicable to all official acts of individuals functioning under an oath of office." Virag v Hynes, 54 NY2d 437, 443 (1981). As the Court of Appeals has explained, the rule "assumes that public officials will perform their duties in good faith and with proper regard to the interests committed to them." Emerson v Buck, 230 NY 380, 389 (1921). See also Driscoll v Troy Hous. Auth., 6 NY2d 513, 518 (1959). See also US Postal Service v Gregory, 534 US 1, 10 (2001) ("[A] presumption of regularity attaches to the actions of government agencies."); Fisch on Evidence, Section 1134; Prince, Richardson on Evidence §3—120, at 70, [Farrell 11th ed]).
The Court of Appeals has applied the official-acts presumption in both civil and criminal matters and has specifically applied it to prosecutorial acts. Brown, 28 NY3d 399 (statement of readiness); Virag, 54 NY2d at 399 (prosecutorial subpoenas); People v Rallo, 39 NY2d 217, 225 (1976) ("The general rule is that the Governor and the District Attorney, as public officials, will perform their duties honestly and in conformity with the law."). Likewise, the Supreme Court has applied this presumption to prosecutorial acts. Hartman v Moore, 547 US 250, 263 (2006) (invoking "the longstanding presumption of regularity accorded to prosecutorial decisionmaking"); Reno v American—Arab Anti—Discrimination Comm., 525 U. 471, 489—490 (1999) (referencing "the presumption that a prosecutor has acted lawfully").
Additionally, CPLR §4520 compels the same result. That section provides that "[w]here a public officer is required or authorized, by special provision of law, to make a certificate or an affidavit to a fact ascertained, or an act performed, by him in the course of his official duty, and to file or deposit it in a public office of the state, the certificate or affidavit so filed or deposited is prima facie evidence of the facts stated." Here, all the elements of the statute were satisfied. The prosecutor is "required . . . by special provision of law," specifically CPL §245.50, to make a "certificate" regarding "an act performed[] by him in the course of his official duty" and to file it with the court. Here, on February 13, 2025, the New York County District Attorney's Office filed a COC and accompanying SOR informing the Court that they had done everything to the point that the case could be readily tried and were ready to try the case, which they reaffirmed on March 3, 2025. As a result, the certificate is prima facie evidence of the facts stated therein, or presumptively valid and accurate. Thus, once again, "[i]n the absence of proof that [a] readiness statement did not accurately reflect the People's position ..., the People [have] discharged their duty under CPL 30.30." Carter, 91 NY2d at 799.
Moreover, because the People declared their readiness on February 13, 2025, they had brought the case into the post-readiness context and must be evaluated in this context, as discussed extensively above. See supra. Namely, that the People's declarations, and continued declarations, of trial readiness are afforded the benefit of being presumed truthful and accurate, and defendant must prove either one or both the People's February 13, 2025, and March 3, 2025 statements of readiness to be illusory. People v Brown, 28 NY3d 392 (2016); Carter, 91 NY2d at 799. Also, in the post-readiness context of the case, the People are only chargeable with delays attributable to their inaction and that directly implicate their ability to proceed to trial. People v Nielsen, 306 AD2d 500 (2d Dept 2003) and defendant must prove that these periods should be charged to the People. Cortes, 80 NY2d at 215-16; Anderson, 66 NY2d at 541; see also CPL § 210.45[7]).
On March 3, 2025, the People announced that they were ready for trial, having complied with their discovery obligations, and were ready to proceed to trial, with a witness available to testify that same day, so any resulting delays cannot possibly be said to "directly implicate their ability to proceed to trial" on that date. The People did not request an adjournment. Defense counsel represented on the record that he had received the People's COC, reviewed discovery, asked the prosecutor for additional discovery, received additional discovery, had not received a SCOC, and that there remained discovery still outstanding, namely 911 caller information, the name of a 911 representative, and an ICAD, none of which established that the People were not ready for trial on either or both February 13, 2025, or March 3, 2025. Furthermore, counsel failed to demonstrate that the People were chargeable with any specific delay. Notably, at this stage, defense counsel failed to file any motion, such as a COC challenge, with respect to §30.30 [*15]— as he must. See CPL §§ 30.30(1)(a); 245.50(4)(a)-(c).
While the Court, under CPL §§ 245.50(3) and 30.30(5), must conduct an inquiry to determine whether the People are "actually" ready, and must likewise "deem" the People ready, this Court had not conducted any review as to whether the February 13, 2025 COC was "proper" under the statute (CPL §245.50[3]), and with no §30.30/COC motion before it, it simply could not have. A COC can be "proper," even with information belatedly disclosed or undisclosed (see Bay supra; CPL 245.50). Additionally, a Court can deem the People ready when discovery has been "lost, destroyed, or otherwise unavailable" as defined by CPL §245.80 [FN2]
(245.50[3]). There are even instances where the People can be deemed ready in "special circumstances [FN3]
" even without a COC or discovery. Id. Accordingly, the Court should not have deemed the People not ready for trial based on counsel's in-court declarations as to any belated or outstanding discovery. Furthermore, counsel's claims were not persuasive because, in any event, the People's COC was proper from the first instance as determined supra.
For the reasons set forth above, the People were improperly deemed not ready for trial on March 3, 2025, and this Court reverses that determination. Accordingly, the People were validly ready for trial on February 13, 2025, and March 3, 2025, and are chargeable with 0 days for the periods of February 13, 2025, to March 3, 2025, and from March 3, 2025, to April 3, 2025. (0 days charged, 74 days total)
In any event, this Court further finds that the period between March 3, 2025, to April 3, 2025, is nevertheless excludable as an adjournment granted at the request of, or with the consent of, defense counsel. See CPL §30.30(4)(b). Such delays "have been caused by the defendant for his own benefit", and, therefore, "the People are not required to causally trace their lack of readiness to defendant's actions before the court is warranted in excluding [them]." People v Worley, 66 NY2d 523, 527 (1985). The record reflects that the court suggested a motion schedule to address defense counsel's discovery concerns, but counsel declined, requesting that the case be adjourned so that the parties could resolve discovery disputes, which was granted. This period is therefore excludable and was to his benefit regarding discovery. Worley, 66 NY2d at 527 (when a defendant requests or consents to delay, the defendant waives any claim that the period is chargeable to the People); People v Thomas, 223 AD2d 610 (2d Dept 1996). Similarly, where defense counsel actively participated in setting the adjourn date, the adjournment is tantamount to a consent adjournment. See CPL §30.30((4)(b); People v Davis, 80 [*16]AD3d 494 (1st Dept 2011). Accordingly, the period between March 3, 2025, to April 3, 2025, is excluded on this ground as well. (0 days charged, 74 days total)
On April 3, 2025, the present motion schedule was set by this Court and the case adjourned for decision on motion for June 26, 2025. This period is excludable for defendant's motion practice. CPL §30.30(4)(a). (0 days charged, 74 days total)
In sum, the People are attributable with 74 days, well within their 90-day statutory allowances, and defendant's CPL §30.30 motion is denied without a hearing. And given that only 74 days are chargeable to the People, this Court need not rule on whether the prosecutor's four days of military leave constitutes an exceptional circumstance under CPL §30.30(4)(g), and this Court similarly declines to address the parties' remaining contentions. Defendant's other motions in this branch are also denied for the foregoing reasons.

MOTIONS TO SUPPRESS PHYSICAL EVIDENCE
The branch of defendant's motion seeking suppression of physical evidence is granted to the extent that a combined Dunaway/Johnson/Mapp hearing is ordered. See CPL §710.60(4).

MOTION TO SUPPRESS CHEMICAL TEST EVIDENCE
The branch of defendant's motion seeking the suppression of refusal evidence is granted, with the People's implied consent in their papers, to the extent that a VTL §1194 refusal hearing is ordered.
Defendant's related motions as to the "two-hour rule" are denied. The two-hour rule does not apply in instances, such as this one, where a defendant refuses to take the test. See VTL §1194(2)(f); see also People v Robinson, 82 AD3d 1269 (2d Dept 2011) (two-hour rule only applies to person incapable of consenting and not to instances where defendant voluntarily takes test or where he refuses). Defendant's reliance on People v Ayala, 89 NY2d 874 (1996) to support his argument that a violation of the two-hour rule requires suppression of test results, let alone the refusal of such result, is misplaced. The Ayala court simply held that where a trial court grants suppression based on a two-hour rule violation, the People have the right to interlocutory appeal that court's suppression ruling. See People v Borgella, 24 Misc 3d 1202(A) (Crim Co NY Co 2009). Accordingly, the motion to suppress the results of the chemical test refusal based solely on whether the test was offered/administered more than two hours after defendant's arrest is denied and shall not be part of the hearing nor a basis of pre-trial suppression.

MOTION TO SUPPRESS STATEMENT EVIDENCE
The branch of defendant's motion seeking the suppression of properly noticed statements made by defendant to law enforcement is granted to the extent that a Huntley hearing is ordered as to voluntariness.

MOTION TO SUPPRESS VOLUNTARY/INVOLUNTARY STATEMENTS
The branch of defendant's motion for a pre-trial "voluntariness" hearing regarding unnoticed statements sought to be used solely on cross-examination of the defendant pursuant to CPL §60.45; CPL §710.20(3); and CPL §710.40(3), is denied, as premature, with leave to renew if it is determined that such statements exist. The determination as to whether a statement was properly noticed is left to the sound discretion of the hearing or trial judge.
The branch of defendant's motion for a pre-trial "voluntariness" hearing regarding statements made by the defendant to civilian(s) is denied. The defendant has not asserted that the defendant made any voluntary or involuntarily statements pursuant to CPL §60.45. Accordingly, the defendant's request for a voluntariness hearing is denied.

MOTION TO PRECLUDE
The branch of defendant's motion to preclude the offering of any unnoticed statement evidence or unnoticed identification evidence pursuant to CPL §710.30, is denied as premature as the People have not sought to offer any such evidence.

MOTION FOR A BILL OF PARTICULARS
Defendant's moves this Court for an Order directing the People to supply him with a Bill of Particulars under CPL §200.95. In support of this motion, he argues that the accusatory instrument is factually vague and conclusory, and that defendant cannot adequately prepare a defense without the information requested with respect to the offenses charged (Defendant's Motion ¶¶ 57-8). The People oppose, arguing that the facts supplied in their ADF, and other discovery, adequately apprises defendant of the charges, and that a Bill of Particulars is therefore unnecessary. They additionally contend that the rest of defendant's requests are evidentiary matters not within the scope of CPL §200.95 (People's Response at 36).
The Court has reviewed the People's ADF, along with the Criminal Court information, and holds that they clearly apprise defendant of the conduct constituting the subject of the accusations made against him with particularity, rendering a Bill of Particulars moot. Moreover, this Court notes that defendant has access to all the discovery available in this case and was served with a COC. It therefore cannot be credibly claimed that defendant is ignorant of the substance of the accusation. Accordingly, defendant has already been provided all the particulars to which he is entitled. See CPL §200.95. 
The other information requested is evidentiary detail beyond the scope of a bill of particulars. See People v Davis, 41 NY2d 678, 680 (1977) ("[a] bill of particulars serves to clarify the pleading; it is not a discovery device"). The remaining matters sought are either beyond the scope of CPL §200.95 or are matters of evidence. Therefore, pursuant to CPL §200.95(4), the People do not need to supply further particularization of the information and ADF. Hence, defendant's motion is denied.

MOTION FOR A SANDOVAL HEARING
Defendant seeks the preclusion of using defendant's prior bad acts and prior convictions at trial. Should he testify, defendant, like any other witness, places his credibility in issue. Although a witness may not be questioned about an arrest per se, it is a provident exercise of the Court's discretion to permit cross-examination concerning any immoral, vicious, dishonest and or criminal act, even if defendant was not formally charged with it. People v Sandoval, 34 NY2d 371, 373 (1974); People v Rockwell, 18 AD3d 969 (3d Dept 2005); People v Di Bella, 277 AD2d 699 (3d Dept 2000); People v Connolly, 259 AD2d 1039 (4d Dept 1999); People v Maiolo, 122 AD2d 586 (4d Dept 1986); Prince, Richardson on Evidence, 11th Ed., 6-406.
The People's disclosure obligation is governed by People v Sandoval, 34 NY2d 371 (1974), which directs the People to notify the defendant, immediately prior to the commencement of jury selection of the acts which they will seek to use for impeachment purposes. However, it is defendant who must demonstrate that the prejudicial effect of such evidence so far outweighs its probative worth that it must be excluded, as it is the defendant who bears the burden of persuasion. See Sandoval, 34 NY2d 371, 378 (1974). The permissible scope of such impeachment evidence rests largely, if not completely, with the trial court. People v Gray, 84 NY2d 709, 712 (1995); People v Walker, 83 NY2d 455, 459 (1994). Accordingly, defendant's motion is deferred to the trial court. Sandoval, 34 NY2d 371 (1974). 

DEFENDANT'S MOTIONS FOR DISCOVERY
The People are ordered to respond to defendant's demand to produce discoverable [*17]material in accordance with CPL §245, to the extent they have not already done so. CPL §245.20. The People are reminded of their continuing obligations pursuant to Brady v Maryland, 373 US 83 (1963) and People v Rosario, 9 NY2d 286 (1961), and are ordered to provide such material as requested in the moving papers, to the extent they have not already done so. See People v Consolazio, 30 NY2d 446 (1976). As to the defendant's specific Brady/Vilardi production requests, the People are reminded of their continuing duty to provide evidence or information that is favorable to the defendant.

OTHER MOTIONS
Defendant's remaining requests are denied as duplicative, premature, moot, unsupported by the record, or without merit. 

RESERVATION OF RIGHTS
Defendant's application for an extension of time to file additional motions is denied subject to rights under CPL §255.20(3) to move for further leave upon good cause shown.

PEOPLE'S MOTION FOR RECIPROCAL DISCOVERY
The People seek reciprocal discovery from defendant, namely, information pertaining to alibi. Defendant is hereby directed to supply the People with alibi information and comply with his reciprocal discovery obligations pursuant to CPL §245.20(4), including filing and serving a Defense Certificate of Compliance with the People and the Court.
The foregoing constitutes the Opinion, Decision, and Order of the court.
Dated: June 27, 2025
New York, New York
ELIZABETH Y. SHAMAHS, J.C.C

Footnotes

Footnote 1:This Court reviewed the hearing transcript in People v. Shaniece Ballard, Queens County Docket No. CR-002769-23QN, during which Ms. Allison Arenson, Executive Agency Counsel for the NYPD Legal Bureau's Body-Worn Camera Unit, testified about the nature and contents of body-worn camera audit trails and this Court additionally relies on the transcript, and the testimony therein.

Footnote 2:Strangely enough, while the Legislature used the phrase, "lost, destroyed, or otherwise unavailable," in §245.50(3), noting that the same phrase was defined in §245.80(1)(b), the Legislature only uses the phrase "lost or destroyed" in §245.80. Conspicuously absent is the term, let alone a definition, for "otherwise unavailable" in that section, and in any other section of CPL Article 245.

Footnote 3:The Legislature did not define what constitutes "special circumstances," nor did the Legislature offer any guidance as to what the statute contemplates with this term. The only thing that can be gleaned from the term "special circumstances" is that it is not the same as "exceptional circumstances" as defined in §30.30(4)(g). This is supported by the early drafts of §245.50(3) that used the term "exceptional circumstances" before the 2020 revision that replaced "exceptional circumstances" with "special circumstances."